| 94 | 226 |
| 97 | 530 |
| 97 | 637 |
| 94 | 226 |
| 100 | 196 |
| 102 | 403 |
| 94 | 226 |
| 108 | 264 |
| 94 | 226 |
| 134 | 419 |
| 94 | 226 |
| 141 | 299 |

# Ala. Great Southern Railroad Co. *v.* Tapia.

*Action for Damages, by Ejected Passenger against Railroad Company.*

1. *Objection to part of damages claimed; demurrer.*—In an action to recover damages, a demurrer does not lie to the complaint, or to any entire count, because some of the special damages claimed are not recoverable; the remedy is by motion to strike out, by objection to evidence when offered, or by a request for instructions to the jury.

2. *Conduct of flag-man, at instance of conductor; variance.*—Under a complaint which alleges that the conductor wrongfully compelled plaintiff to leave the train, plaintiff may prove the conduct of the flag-man in compelling him to leave the car, when the flag-man himself testifies that he was authorized by the conductor to put plaintiff off; it being also matter of common knowledge that it is one of the ordinary duties of flag-men and brakemen to assist in carrying out the orders of the conductor with respect to refractory passengers.

3. *Admissibility of declarations; special damages for abusive language.*—Damages can not be allowed on account of harsh and abusive language used by the brakeman in compelling plaintiff to leave the car, when not specially claimed in the complaint; but evidence of the use of such language, accompanying the act of ejecting, is admissible as a part of the *res gestæ.*

4. *To what witness may testify.*—A witness who was present when plaintiff was compelled to leave the car, though he claimed that he had paid his fare, can not be allowed to testify that the conductor "seemed anxious to get the matter settled"—"that his actions showed he was doing his utmost to get the matter settled without further trouble"—"that in his opinion the conductor behaved as well as a man could do in such a case;" these statements being the mere opinion and conclusion of the witness, and not short-hand renderings of facts.

5. *Special damages for expenses resulting from delay; variance.*—In

[Ala. Great Southern Railroad Co. v. Tapia.]

an action for damages by a passenger wrongfully ejected from a railroad train, he may claim and recover special damages for expenses necessarily incurred "for telegrams necessary to inform his family and business associates of his whereabouts;" but, under such an averment and claim, there must be a strict correspondence between the allegation and the proof, and he can not prove or recover for the price of a telegram sent to his brother in a neighboring city, requesting him to attend to a matter of urgent business which his enforced delay prevented him from attending to in person, there being no evidence that his brother was a member of his family, or connected in business with him.

6. *Damages for injured feelings and imputation on character.*—Plaintiff having been compelled by the conductor to leave the train on which he was travelling, against his protest and claim that he had paid his fare, which the conductor denied, the charge is necessarily derogatory to plaintiff's character as an honest man, without regard to the particular language used, and authorizes the jury to infer that his pride and feelings were wounded, and that he suffered mental distress and humiliation, as a basis for the claim of damages on that ground.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES B. HEAD.

This action was brought by Joseph A. Tapia against the appellant corporation, to recover damages for the defendant's wrongful act, through the conductor of one of its trains, on which plaintiff was travelling as a passenger from Eutaw to Birmingham, in ejecting him from the train, or compelling him to leave it, at Cottondale, an intermediate station; and was commenced on the 21st February, 1890. The complaint contained but a single count, which, after stating that plaintiff had bought and paid for a ticket from Eutaw to Birmingham, and protested against being compelled to leave, alleged that "the conductor wrongfully required and compelled him to leave the train at Cottondale," and, in doing so, "used vulgar, abusive and insulting language, derogatory to plaintiff's character as an honest man, and then and there, in effect, charged plaintiff with attempting to ride on said train without paying his fare; which said language was used in the presence and hearing of sundry persons; and by reason of each said wrongs severally, plaintiff was greatly humiliated, his feelings and pride were sorely wounded, he suffered great mental pain, and his reputation was injured; and plaintiff lost a long time, to-wit, five days from his business, and was put to great inconvenience and expense," &c., as copied in the 5th paragraph of the opinion. The defendant demurred to the complaint, assigning the following as special grounds of demurrer: (1) because the complaint does not set forth what damages the plaintiff suffered in being greatly humiliated; (2) because he is not entitled to any damages on account of the alleged fact that his feelings and pride were sorely wounded; (3) be-

[Ala. Great Southern Railroad Co. v. Tapia.]

caused he is not entitled to any damages on account of the alleged mental pain which he suffered; (4) because the complaint does not allege or show wherein and how plaintiff's reputation was injured; (5) because the damages claimed for telegrams to plaintiff's friends are not a proximate and necessary result of the alleged injury; (6) because injury to plaintiff's reputation is not an element of recoverable damages in this case. The court overruled the demurrer, and issue was joined on the plea of not guilty. The jury gave the plaintiff a verdict for $850.

On the trial, the defendant reserved several exceptions to the rulings of the court on evidence, and also to charges given and refused; and all of these rulings, with the overruling of the demurrer to the complaint, are now assigned as error, making 33 assignments of error.

WOOD & WOOD, for appellant.

BOWMAN & HARSH, contra.

McCLELLAN, J.—The demurrers to the complaint were properly overruled; and this whether the legal positions taken by the demurrant were abstractly sound or not. Not one of the grounds assigned, nor all of them together, professed to answer, or did in fact answer the whole complaint, but each of them was addressed to its supposed insufficiency in respect of some one item or specification of damage; and none of them goes to the denial of the whole cause of action relied on by plaintiff. As was said in *Kennon v. Western Union Telegraph Co.* (92 Ala. 399): "Causes can not be determined by piecemeal on demurrer. The pleader must answer the whole complaint, and for all purposes, when he resorts to this mode of defense. When the cause of action is sufficiently stated to authorize a recovery . . . of any damages, a partial defense, going to a denial of the right to recover a part of the damages claimed, must be availed of and effectuated by motion to strike out the objectionable averments, or by objections to the evidence, and through instructions to the jury."—*Hays v. Anderson*, 57 Ala. 375; *Flournoy v. Lyon*, 70 Ala. 308; *Daughtery v. Telegraph Co.*, 75 Ala. 168.

2. The *gravamen* of the complaint is, that defendant's conductor wrongfully required and compelled plaintiff, who had taken passage and paid his fare from Eutaw to Birmingham on one of defendant's train, to leave the cars at Cottondale, an intermediate station, a considerable distance short of this destination, and that in and about requiring plaintiff to thus

leave the train the conductor was abusive and insulting to him, using language which was derogatory of his character as an honest man, and which imputed a charge that he was attempting to proceed on his journey without paying his fare, &c., &c. The evidence was without conflict to the point, that soon after passing Tuskaloosa the conductor determined upon putting plaintiff off the train, informed him that he must get off, and directed the flag-man to look after him. Plaintiff's testimony tended to show that the conductor told him he must get off at the next station, which was Cottondale. It was also in evidence that the flag-man, in the presence of the corductor, and as a part of the altercation as to whether plaintiff had paid his fare, said, "We will put you off," and told the plaintiff, when the latter proffered a check, which he claimed the conductor had given him, that it was not his check, and that he would have to pay his fare or get off. The flag-man himself testified as follows: "I was in the habit of helping the conductor take up tickets, and of putting checks in the hats of passengers. . . I never put any passengers off before, unless they were without their tickets. The conductor did authorize me to put them off when they would not pay their fare. When a man is trying to beat the road, we put him off." All this afforded the basis for an inference to be drawn by the jury, that the flag-man acted in the premises for the conductor, and in execution of the latter's directions; and when this evidence is considered in connection with the common knowledge that conductors have the superintendence and control of their trains and of all other trainmen, and that it is one of the ordinary duties of flag-men and brakemen to assist, and carry out the orders of conductors with respect to refractory passengers, we can not be in doubt but that all that was said and done by the flag-man in this instance, in and about ejecting plaintiff from the train, was properly allowed to go to the jury in support of the averment of the complaint, that the *conductor* wrongfully required and compelled the plaintiff to leave the train; the flag-man being the mere instrument for the effectuation of the conductor's orders, and the act done and the circumstances under which it was done being as much that of the conductor, and as fully characterized as his act by the attendant circumstances as if no intermediary or agency had been employed to its consummation.—*A. G. S. R. R. Co. v. Frazier*, 93 Ala. 45.

3. Nothing is claimed in the complaint, however, on account of harsh or abusive language on the part of the flag-man toward the plaintiff, and the language employed by him, while executing the determination of the conductor to put plaintiff

[Ala. Great Southern Railroad Co. v. Tapia.]

off the cars, could not be made the basis for the imposition of damages; but it was none the less admissible as a part of the *res gestœ* of the main fact—the ejection of the plaintiff—and as going to show that the plaintiff was required and compelled to leave the train by the conductor, acting as to the final accomplishment of his purpose, in this regard, through the instrumentality of his assistant, the flag-man. The several exceptions received in this condection are without merit.

A part of the court's general charge bearing upon defendant's liability for language used by the flag-man is set out in the bill of exceptions, and properly so, at the instance of the presiding judge; and this very accurately and succinctly guards the jury against the imposition of any damages on account of the mere words of the flag-man. No exception whatever was reserved to the part of the charge thus incorporated in the record, but argument is submitted here against its correctness. For this reason we refer to it here only to observe that, in the first place, the charge is unobjectionable, and, in the next, that, whether objectionable or not, it is not presented here for review.

4. There was no error in excluding from the jury the testimony of the witness Barnes, with respect to the efforts of the conductor to ascertain whether the plaintiff had paid his fare to Birmingham, as he claimed to have done, to the effect that the conductor "seemed to be anxious to get the matter settled;" that "the conductor's actions showed that he was doing his utmost to get the matter settled without further trouble," and that "in my opinion Conductor Ford conducted himself as well as a man could do in such a case." These were not short-hand renderings of fact, but patently the opinion and conclusions of the witness upon certain facts, which themselves should have been adduced in evidence, and upon which the jury alone were to pass judgment and make up their opinion and conclusion as to whether the conductor was at fault in the premises immediately involved.—*Tanner v. L. & N. R. R. Co.*, 60 Ala. 621; *Hames v. Brownlee*, 63 Ala. 277; *Loeb v. Flash*, 65 Ala. 526; *Baker v. Trotter*, 73 Ala. 277; *Poe v. State*, 87 Ala. 65.

5. The complaint claims damages for that the plaintiff "lost a long time, to-wit, five days, from his business, and was put to great inconvenience and expense; and among other things he was compelled to pay a large amount, to-wit, twenty-five dollars for board and lodging and necessary personal expenses in Cottondale, and for telegrams necessary to inform his family and business associates of his whereabouts, and for transportation to his said destination;" and further

[Ala. Great Southern Railroad Co. v. Tapia.]

damages for that plaintiff was humiliated and sorely wounded in his feelings and pride, and injured in his reputation by reason of being compelled to leave the train under the circumstances alleged.

Special damages are such as result naturally but not necessarily from the wrong complained of. This principle is aptly illustrated in the present case on the claim for damages which is made to rest upon the necessity, under which the ejection of plaintiff from the train placed him, to send telegrams "to his family and business associates to inform them of his whereabouts." Manifestly this was not a necessary result to plaintiff from being put off the train and forced to remain for a time at Cottondale—not such a result as, in all cases, would ensue from the facts alleged; and yet it was a natural consequence of those facts, filling the definition of "special damage." It is a familiar rule of pleading, that before such damages can be recovered, they must be specially alleged, to the end that the defendant, apprised by general averments of damage of a claim of such only as necessarily result from the wrong, may not be taken by surprise on the trial. And upon such special averment there must be strict correspondence of proof; the defendant has a right to assume that that which is thus particularly alleged, and that only, will be attempted to be proved, and to prepare for the trial accordingly. Now, under the averment we have quoted, the plaintiff, against defendant's objection, was allowed to prove, not that he had "to send telegrams to his family and business associates to inform them of his whereabouts," but that he sent a telegram to his brother in the city of Montgomery, requesting him to attend to a matter of urgent business, which plaintiff's enforced delay at Cottondale prevented his attending to in person. It does not appear that there was any necessity for plaintiff to inform his brother of his whereabouts, or that he did in fact so inform him; nor does it appear that plaintiff's brother was a business associate, or a member of the latter's family in the usual acceptance of that term, or in the sense implying a necessity that the plaintiff should advise him that he was at Cottondale. After much consideration, accompanied with reluctance to reverse the judgment of the trial court on a point involving so small a part of the damages claimed and found by the jury, we are forced to the conclusion, that the averment of a necessity to acquaint his family and business associates by telegram of his whereabouts, did not apprise the defendant that plaintiff would attempt at the trial to prove that he had by telegram requested his brother to attend to the matter of business in question, and hence that evidence of the last named necessity was improperly received.

It would seem, however, that charge 8 requested by the defendant in this connection, to the effect that there was no evidence in the case of a necessity upon plaintiff to inform his family and business associates of his whereabouts, was properly refused, as, while no testimony was directly adduced in that regard, there was yet room for an inference to be drawn by the jury of such necessity.

6. Charges 3, 5, 6, 26 and 34 requested by defendant, were properly refused, on the ground that there was evidence before the jury from which they had the right to infer the existence of every fact which they severally would have put the court in the attitude of declaring found no lodgment in any tendency of the testimony. Charges 3, 5, 6 and 34 respectively assert that there is no evidence that "the conductor used language derogatory to plaintiff's character as an honest man," or that he, "in effect, charged plaintiff with attempting to ride on said train without paying his fare," or that "the feelings and pride of the plaintiff were sorely wounded," or that plaintiff "suffered any mental distress or humiliation by reason of being required to get off the train." Now, there was evidence going to show that the plaintiff had paid his fare, that he asserted that he had done so, and insisted that he should be allowed to continue on the train, and protested against being put off. The conductor denied the truth of his statements, and told him he would have to get off, and had him put off, notwithstanding his assertions, protestations and insistence. That he was trying to ride to Birmingham without paying his fare again, was manifest. The conductor, by denying that he had paid, in effect, the jury might have inferred, charged him with attempting to go on without paying; and it will not be contended that such a charge, by whatever language promulgated, was not derogatory of plaintiff's character as an honest man. And from the mere fact of plaintiff's being required and compelled to leave the train, under the circumstances which were shown by one aspect of the testimony, the jury were authorized to infer that his feelings and pride were wounded, and that he suffered mental distress and humiliation.—*C. & A. R. R. Co. v. Flagg*, 43 Ill. 364; *C. & N. W. Ry. Co. v. Chisholm*, 79 Ill. 584.

Similarly, charge 26 asserts that there is no evidence that the flag-man was authorized to put the plaintiff off the train; when, as we have seen, there were many facts and circumstances adduced from which the jury might well have inferred such authority.

For the error pointed out above, in the admission of testimony, the judgment is reversed, and the cause remanded.

Reversed and remanded.