[Western Union Tel. Co. v. Hawkins.]

# Western Union Tel. Co. v. Hawkins.

### Delay in Delivery of Telegram.

(Decided October 26, 1915. 70 South. 12.)

1. Telegraphs and Telephones; Delay in Delivery; Complaint.—Whether the action be ex contractu or ex delicto, the sendee of a message must allege a consideration for the promise of the telegraph company to transmit the message in order to recover damages for its delay in transmission.

2. Same.—Where the sendee of a message brings an action ex contractu for delay in its delivery he must connect himself with a contract for such delivery, either directly or through another as his agent, unless it is alleged that the message was sent solely for his benefit.

3. Same.—An added allegation, by way of amendment, that plaintiff lost the sum of 40 cents paid by him for the transmission of the message, was not sufficient to show a valid contract between the sendee and the company for the transmission of the message, entered into before the sending.

4. Evidence; Documentary.—In the absence of preliminary proof laying a foundation therefor, a book kept by the telegraph company, in which was recorded the condition of the line, was not admissible in evidence.

5. Charge of Court; Misleading.—The trial court will not be reversed for refusing charges, which are misleading and confusing.

6. Telegraphs and Telephones; Delay; Damages; Complaint.—In the absence of a showing that plaintiff not only could but would have attended the funeral had the death message been promptly delivered, damages for mental anguish in being prevented from attending the funeral cannot be recovered.

7. Same; Special Damages.—Where the complaint alleged that if the message had been delivered to plaintiff with reasonable despatch, he would have been able to attend the funeral of deceased, it was not sufficient to justify the recovery of damages for mental anguish in being prevented from attending the funeral, such allegation not showing that plaintiff would have attended the funeral if the telegram had been promptly delivered.

8. Same; Manner of Reaching.—Where the complaint did not contain the necessary allegations as a basis for the recovery of special damages for mental anguish, the way to reach the defect is either by a motion to strike out the claim for such damages, or objection to evidence offered in support thereof, or charges directing the jury to disregard the claim.

9. Same.—The plaintiff must show that he was available for delivery of the telegram at the time when it should have been delivered in order to recover damages for mental anguish.

10. Same; Proximate Cause.—Where the action was by the sendee of a death message for damages for delay in its transmission, and it appeared that he had information of the dying condition of the person to whom the message related, from other sources, the question as to whether he was prevented from attending the funeral by defendant's negligence or by his own indisposition, was a question for the jury under the evidence in this case.

APPEAL from Birmingham City Court.

Heard before Hon. JOHN H. MILLER.

Action by Weaver Hawkins against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Count 2 is as follows:

Plaintiff claims of the defendant the further sum of $1,500 as damages for that, heretofore, on, to-wit, January 3, 1913, the defendant was a corporation engaged in the business of transmitting messages for hire by means of telegraph from Social Circle, Ga., to Birmingham, Ala. That on said date one Laura Johnson for plaintiff's benefit delivered to defendant at Social Circle, Ga., the following message: "Weaver Hawkins, 1200 Ave. C. Birmingham, Ala. She is dead. Laura Johnson." The defendant knew when it received said message for transmission that it was sent for plaintiff's benefit, and, knowing this, received said message to be transmitted and delivered to plaintiff with reasonable promptness. But plaintiff avers that defendant negligently failed to transmit and deliver said message with reasonable promptness, but delayed the delivery of same to plaintiff until the afternoon of January 4, 1913. And plaintiff avers that said message announced the death of his grandmother, and, if same had been delivered to plaintiff with reasonable dispatch, he would have been able to attend the funeral of his said grandmother. And plaintiff further avers that, as a proximate consequence of the defendant's said negligence, plaintiff was caused great mental pain and anguish, and was required to pay out a sum of money for a telephone call in attempting to find out whether or not his said grandmother had died.

The other facts sufficiently appear.

FORNEY JOHNSTON, W. R. C. COCKE, and GEORGE H. FEARONS, for appellant. BURGIN, JENKINS & BROWN, for appellee.

THOMAS, J.— (1) In an action against a telegraph company by the sendee of a message seeking damages for delay in the transmission of the message, that is, for non-delivery within a reasonable time, the complaint, whether ex contractu or ex delicto, must, in order to withstand attack against appropriate demurrer, allege or show a consideration for the telegraph company's promise or undertaking to transmit the message; otherwise, under the rule that pleadings are construed most strongly

against the pleader, it will be presumed that the undertaking or promise on the part of the company was entirely voluntary or gratuitous, for a breach of which no action would lie, either in contract or in tort, since a consideration is essential to a binding contract, without which the one action (the action ex contractu) could not be maintained, and since a binding contract is essential to the imposition of a duty to transmit it, without which the other action (an action ex delicto) could not be maintained.— *Newton, et al. v. Brook*, 134 Ala. 269, 32 South. 722; *Birmingham Ry., L. & P. Co. v. Abbott*, 6 Ala. App. 643, 60 South. 970.

(2) And where, in case of such delay, the sendee sues ex contractu instead of ex delicto, it is not only essential that he allege and show a contract, as said, either express or implied, on the part of the telegraph company to transmit the message, that is a promise on their part to do so upon the faith of a valid consideration paid or promised at the time, but it is also essential that he by appropriate allegations connect himself with that contract as a party, either directly or through another as his agent, unless it appears from the allegations of the complaint that the message was sent solely for the benefit of the sendee.—*Western Union Tel. Co. v. Adams*, 154 Ala. 657, 46 South. 228; *McGehee v. Western Union Tel. Co.*, 169 Ala. 109, 53 South. 205, Ann. Cas. 1912B, 512; *Western Union Tel. Co. v. Brown*, 6 Ala. App. 339, 59 South. 329. If the action is ex delicto, a mere beneficiary—though he be not the sole beneficiary and though he be not a party, either directly or per alium, to the contract of transmission—may, under certain circumstances, sue; but in any case the complaint must show a contract for transmission.—*Western Union Tel. Co. v. Brown, supra*, and authorities supra.

Count 2 of the complaint here, which the reporter will set out, fails to show any consideration moving either from the sendee or from the sender, or any other person, to the defendant telegraph company for its promise or undertaking, if any, to transmit the alleged message; hence the count is bad, whether it be treated as ex contractu or ex delicto.—*Western Union Tel. Co. v. Krichbaum*, 132 Ala. 535, 31 South. 607; *Newton, et al. v. Brook, supra; Birmingham Ry., L. & P. Co. v. Abbott, supra.*

And, if treated as a count ex contractu, it is further bad in that it fails to show that the sendee was a party to the contract of transmission, or that the message was sent for his sole benefit.— *Western Union Tel. Co. v. Adams, supra; McGehee v. Western*

*Union Tel. Co., supra; Western Union Tel. Co. v. Brown, supra.*

(3) The demurrer to the count, it is conceded, properly took the point of its defects as mentioned, but it was overruled by the court. After this the plaintiff amended said count by adding thereto, at the end thereof, the following: "And plaintiff avers that he also lost the sum of 40 cents, paid by him to the defendant for the transmission and delivery of said message, which amount he also claims as damages in said cause."

This amendment, when construed most strongly against the pleader, hardly cures the defects pointed out, in that it fails to show that the 40 cents alleged to have been paid defendant by plaintiff for the transmission of the message was paid or promised at the time defendant promised or undertook the transmission and delivery of the message, and hence fails to show a binding obligation on the part of defendant to transmit and deliver; but, for aught to the contrary appearing from the allegations, the defendant's promise or undertaking was entirely gratuitous or voluntary. If so, no right of action, either ex contractu or ex delicto, could be grounded upon its breach, although the plaintiff, after the message was transmitted and delivered, did pay the defendant 40 cents therefor; for, unless it was, either expressly or impliedly, agreed or understood at the time that defendant promised to transmit the message that the plaintiff, or the sendee, was to pay the 40 cents, or other lawful charges therefor, the subsequent payment of them by plaintiff would furnish no consideration in law for defendant's previous promise, but would be merely a gratuitous payment—a payment which plaintiff was not bound to make—for a past service, which was performed by defendant without the payment or promise of the payment of any consideration in return therefor. The allegations should show a contract, that is, that the plaintiff promised or undertook the transmission and delivery of the telegram for a reward, which might be either paid or promised, at the time of defendant's promise or undertaking, and which, so far as the matter of proof is concerned, would be implied from the fact of the acceptance by defendant company of the message for transmission, in the absence of evidence showing that it was to be transmitted and delivered gratuitously.

Whether the defendant waived its right to review the action of the court in overruling the demurrer by a failure to refile it after the mentioned amendment of the count, as is insisted by

plaintiff in the case under the rule as laid down by our Supreme Court in *Birmingham Ry., L. & P. Co. v. Fox.*, 174 Ala. 669-670, 56 South. 1013, we need not decide, since this judgment has to be reversed for other reasons, and on another trial of the case the pleadings will probably be amended to meet the defects discussed.

Whether count 2 is ex delicto or ex contractu (a much mooted question), it is also unnecessary to decide, for when on another trial, it is so amended, as it probably will be, as to show a contract for the transmission of the message, and that plaintiff was a party to it through the sender as his agent, the count will state a good cause of action. Showing, as in such case it will, that plaintiff is a party to the contract, it will not be necessary to allege, as is insisted by defendant in another ground of its demurrer, that the message was sent solely for plaintiff's benefit, whether the count be regarded as assumpsit for a breach by defendant of the contract, or as in case for a breach of duty growing out of the obligation imposed by the contract.

(4) The defendant urges that the court erred in not permitting it to introduce in evidence a book kept at one of the defendant's offices on the line of transmission, known as the "logbook," wherein is regularly entered by defendant's agent at such office a statement as to the condition of defendant's wires, and which showed, from such statements, that the wires on a part of the line of transmission of the message in question were out of condition on the whole of January 3d and a part of January 4th, the time of delay in the transmission of the message to plaintiff. Whatever be the rule elsewhere on the subject, such a book in the absence of enabling legislation, cannot under principles laid down by our Supreme Court, stand on any higher ground than other memoranda, certainly on no higher ground than books of account before the statute (Code, § 4003), which ground requires certain preliminary proof, as indicated in the authorities below, in order to make them—whether memoranda or books of account —admissible in evidence. Such proof was not offered in this case.—3 Mayf. Dig. 523, § (e) 1; Id. 526, § (e) 4; 2 Ency. of Ev. 600 et seq.; *Birmingham Ry., L. & P. Co. v. Seaborn,* 168 Ala. 658, 53 South. 241; *Jones v. University,* 46 Ala. 626; *Dismukes v. Folson,* 67 Ala. 386; *Hancock v. Kelly,* 81 Ala. 368, 2 South. 281; *St. L. & S. F. R. R. Co. v. Sutton,* 169 Ala. 389, 55 South. 989, Ann. Cas. 1912B, 366; *Tuskaloosa v. Wright,* 2 Port. 230. Under some circumstances memoranda and books of account are

admissible against interest without such proof, when shown to have been made by the other party, but never in favor of such party, without such preliminary proof as that pointed out in the cases cited.—*St. Louis & S. F. R. R. Co. v. Sutton, supra;* 2 Ency. of Ev. 664.

(5) The defendant assigns and urges as error the giving of a number of designated written charges at the request of plaintiff's counsel. Plaintiff's counsel, while insisting that the charges are not defective in the grave particulars urged by defendant's counsel, yet admit that these charges are misleading and confusing as applied to the facts of this case. They no doubt are, viewing them charitably, but whether more than that, as urged by defendant, we need not decide, since the judgment is to be reversed for other reasons, and the court on another trial can remove all questions as to whether the charges are more than misleading and confusing by refusing them in their present form on another trial, which it will be justified in doing, if for no other reason, because they are misleading and confusing.

The defendant requested, which was refused, a charge in writing to the effect that if the jury believed the evidence in the case they could not assess any damages in favor of the plaintiff for or on account of any mental anguish alleged to have been suffered by the plaintiff; and the defendant insists that it was entitled to such charge for several reasons, to-wit: First, because the complaint failed, as it did, to allege that the plaintiff would have attended the funeral of his grandmother, whose death was announced in the delayed telegram, had the telegram been promptly transmitted and delivered on January 3d, which it was alleged would have been in time for him to have done so; second, because there was no evidence, it is contended, tending to show, or from which the jury would be authorized to infer, that, even if the defendant had promptly transmitted the message and had attempted a prompt delivery thereof on January 3d, the plaintiff would have been available for the delivery of it to him on that day; third, because the fact in evidence, which was undisputed, to the effect that the plaintiff had, some 24 hours prior to the time the message in question, announcing the death of his grandmother, was received for transmission, and nearly three days before her funeral took place, sent a telegram to his mother from relatives at the bedside of his grandmother, stating that she, his grandmother, was then dying, and telling his mother to come on

[Western Union Tel. Co. v. Hawkins.]

the first train, shows conclusively, it is insisted, that the negligence, if any, of the defendant in failing to subsequently promptly transmit and deliver the message in question was not the proximate cause of plaintiff's failure to attend his grandmother's funeral, and consequently not the proximate cause of the mental anguish, if any, which plaintiff suffered as a result of such failure, since, independent of the message in question and before it was delivered to the plaintiff, the plaintiff had, in ample time to have attended the funeral, received from the other source mentioned, and that reliable, practically or substantially the same information, it is insisted, as was later imparted by the delayed telegram in question, upon which information if plaintiff had acted, as, it is insisted, he should, he could and would have been present at the funeral of his grandmother and would have been saved the mental anguish now complained of; hence that if he suffered any, it was due proximately to his own negligence in failing to act on the information mentioned, and not to that of the defendant company in failing to promptly transmit the telegram.

(6) Dealing with these contentions in the order stated, it may be said with respect to the first that it is undoubtedly the law that for the plaintiff to be entitled to damages for mental anguish claimed to have resulted from his being deprived, by the negligence of defendant, of the opportunity of attending his grandmother's funeral, it must appear, not only that the plaintiff could, but that he would, have attended such funeral had the telegram been promptly transmitted and delivered.—*W. U. Tel. Co. v. McMorris,* 158 Ala. 563, 48 South. 349, 132 Am. St. Rep. 46; *W. U. Tel. Co. v. Crowley,* 158 Ala. 583, 48 South. 381; *W. U. Tel. Co. v. Robbins,* 3 Ala. App. 234, 56 South. 879.

(7) There was evidence introduced by the plaintiff tending to show both of these facts, but it is insisted by defendant that proof of the later fact was impotent because such fact was not alleged in the complaint, though the first was alleged, the complaint alleging as to these matters only as follows (quoting first from count 1) : "Plaintiff avers   *   *   *   that by reason and as a proximate consequence of defendant's said negligence in failing to deliver said message to plaintiff with reasonable promptness, plaintiff was unable to attend his said grandmother's funeral and to see her body before she was buried, and he thereby suffered mental pain and anguish," and (quoting, second,

from count 2) : "Plaintiff avers * * * that if said message had been delivered to plaintiff with reasonable dispatch, he would have been able to attend the funeral of his grandmother, and plaintiff further avers that as a proximate consequence of defendant's said negligence plaintiff was caused great mental pain and anguish."

We are of opinion that these allegations are not sufficient to show that plaintiff was prevented by reason of and as a proximate consequence of defendant's negligence from attending said funeral, the condition that is essential to the recovery of damages for mental anguish. The allegations show that plaintiff could have, but do not show that he would have, attended said funeral had said telegram been promptly transmitted and delivered, and hence fail to show that defendant's negligence prevented plaintiff from attending said funeral, and consequently fail to show any right to recover the damages claimed for mental anguish.

In the case of *Western Union Telegraph Co. v. Smith* (Tex. Civ. App.) 133 S. W. 1062, decided by the Court of Civil Appeals of Texas, the court, speaking on the proposition now before us, said: "In cases like the present [a suit for mental anguish], it is necessary to prove, not only that the plaintiff could but also that he would, have immediately responded to the telegram, if the same had been promptly delivered, in time to have been present before the death or burial, as the case might be, in order to recover. If it is necessary to make this proof, we think it likewise necessary to make the allegation"—citing in support *Telephone Co. v. Brown*, 104 Tenn. 56, 55 S. W. 155, and *W. U. Tel. Co. v. Bell*, 42 Tex. Civ. App. 462, 92 S. W. 1036.

While neither of our own courts has dealt with this identical proposition of pleading, they have stated principles which are applicable and which sustain the holding of the Texas court; for instance, in the case of *A. G. S. R. R. C. v. Cardwell*, 171 Ala. 274, 55 South. 185, it is said by our Supreme Court: "Proof without allegation is as impotent as is allegation without proof. As a rule, a plaintiff is neither required nor authorized to prove that which is not alleged, nor is the defendant required * * * to disprove matters not alleged or not in issue. It is for these reasons that the issues should be certain, and the pleadings should be the sole expositors of the issues, so that the evidence may be confined to them."

[Western Union Tel. Co. v. Hawkins.]

It is elementary that special damages as contrasted with general damages—and damages for mental anguish fall within the first class—must, in order to authorize their recovery, be specially pleaded and claimed.—*Lewis v. Paull, et al.*, 42 Ala. 136. A general allegation in the complaint; to the effect that plaintiff was prevented as a proximate consequence of defendant's negligence from attending his grandmother's funeral, would have been entirely sufficient as a predicate for the claim there made of damages for mental anguish; but the allegation merely that plaintiff was unable, as a proximate consequence of such negligence, to attend his grandmother's funeral was certainly insufficient to support the claim for such damages. Where a party trusts not to general allegations, but undertakes, as here, to particularize the facts upon which his claim rests, he must state enough as will in law be sufficient to support the claim.—*Va.-Car. Chem. Co. v. Mayson*, 7 Ala. App. 588, 62 South. 253.

(8) Plaintiff's counsel practically concede that the before quoted allegations of the complaint with respect to damages for mental anguish, which constitute all the allegations on that subject, are not sufficient to show a right to recover them, in that they fail to show that plaintiff would have attended, had the telegram been promptly transmitted and delivered, his grandmother's funeral; but they insist that this defect of the claim for such damages should have been reached by demurrer, and not by a request for instructions to the jury to disallow such damages. The law is well settled, however, that demurrer is not the appropriate remedy for purging a complaint of a claim for special damages not shown by the allegations of the complaint to be recoverable in the action, unless they are the sole damages sought (*Blount v. W. L. Tel. Co.*, 126 Ala. 105, 27 South. 779), which is not the case here, but that the proper remedy is either a motion to strike such claim, or by objection to evidence offered in support of it, or by request for appropriate instructions to the jury to disregard such claim.—*A. G. S. R. R. Co. v. Tapia*, 94 Ala. 226, 10 South. 236; *Treadwell v. Tillis*, 108 Ala. 262, 18 South. 886.

We are therefore of opinion that the defendant properly raised the point, and that the court erred in not giving the mentioned charge requested by defendant, and this for the reasons as stated in defendant's first contention hereinbefore set forth.

(9) With respect to the second stated of those contention we need, in view of the fact that the judgment has to be, as seen,

reversed anyway, only say that it is also essential to plaintiff's right to recover damages for mental anguish that he show that he was available for delivery to him of the telegram on said January 3d (*W. U. Tel. Co. v. McMorris,* 158 Ala. 563, 48 South. 349, 132 Am. St. Rep. 46; *W. U. Tel. Co. v. Crowley,* 158 Ala. 583, 48 South. 381; *W. U. Tel. Co. v. Robbins,* 3 Ala. App. 234, 56 South. 879); but whether, as he contends, there was on the last trial sufficient circumstantial evidence to authorize a reasonable inference that he was available it is unnecessary to decide, since the judgment has to be reversed for other reasons, and since upon the next trial plaintiff will, no doubt, remove any room for controversy as to the matter of his availability for delivery.

(10) With respect to the third stated contention of defendant as to why the mentioned charge should have been given, it is essential that we dispose of it, as it goes to the very vitals of plaintiff's claim of damages for mental anguish and presents a question that will also arise on another trial.

In support of the contention the defendant's counsel cite us to a number of authorities, to-wit: 2 Joyce on Electric Law (2d Ed.), § 743A; *W. U. Tel. Co. v. Gulledge,* 84 Ark. 501, 106 S. W. 957; *W. U. Tel. Co. v. Baker,* 140 Fed. 315, 73 C. C. A. 87; *Mullinax v. W. U. Tel. Co.,* 156 N. C. 541, 72 S. E. 583; and *W. U. Tel. Co. v. Leland,* 156 Ala. 335, 47 South. 62. We quote as follows from the text of the first of these authorities, to-wit: "Not only must the claimed damage or loss have been sustained, but it must have been occasioned by reason of the claimed negligent acts of the telegraph company, or a recovery will not be upheld, and recovery will be precluded when the alleged error is not the proximate cause of plaintiff's loss, as where he has obtained information equally as valuable from other sources than the undelivered telegram."

Of the above cited cases sustaining this doctrine, which we approve, the two nearest in point and most strenuously urged are *W. U. Tel. Co. v. Gulledge* and *W. U. Tel. Co. v. Baker;* but we are of opinion that the facts of the case at bar are such that the principle laid down in the text quoted is not applicable, as will be demonstrated by comparing and contrasting the facts of the present case with the state of facts dealt with in the two cases last mentioned, where the doctrine of the text was applied, and which cases, as said, are the strongest cases cited by appellant in support of its position. In the first of these (the *Gulledge*

*Case*), decided by the Supreme Court of Arkansas, the message in question was dated April 13, 1915, was addressed to plaintiff, and read as follows: "Eugene very sick. Wants you to come immediately and wind up his business." The complaint alleged that the negligence of defendant in the delivery of this message prevented plaintiff from reaching the bedside of his brother (Eugene), the person named in the message, before his death and burial. The brother died on April 17th; but on April 15th, which was before the suit message of date April 13th had been delivered to plaintiff, the plaintiff saw a message which was sent to another of his brothers, and which read: "Eugene very low. Come immediately." It appeared that if plaintiff had used due diligence he would have had ample time, after he read the last-mentioned message, to have reached the bedside and funeral of his brother; and the court held that plaintiff's inaction precluded his recovery, saying that: "Had the plaintiff left at once after receiving notice of his brother's condition, he would have reached his bedside several hours before he became unconscious. His failure to do so is the result of his own indisposition or lack of ordinary diligence."

In the second of the last cases mentioned (the *Baker Case*), decided by the United States District Court, the complaint alleged that delay by defendant in the delivery of a telegram, informing plaintiff of her father's death prevented her from attending his funeral. It appeared, however, that before the receipt of the delayed telegram, plaintiff was reliably informed by others that her father had died that morning, August 13th, the day the delayed telegram was sent, and that if she had acted on this information, she could have reached Hot Springs, where he was, from Little Rock, where she was, in ample time for the funeral. The court, in dealing with this phase of the case and speaking through Judge Sanborn, among other things, said: "The anguish of suffering for which the plaintiff sought to recover damages under the statute was that which resulted to her from her absence from the funeral of her father. There are at least three facts which are essential to her cause of action: (1) That the company was guilty of negligence in the delivery of the message; (2) that the delay of the company in delivering the message caused the plaintiff's absence from the funeral of her father; (3) that her absence inflicted anguish or suffering upon her. Conceding that there was evidence of the first and third facts,

yet the plaintiff was not entitled to recover unless she also established the second. One may not be legally mulcted in damages for acts of negligence which did not produce them. The plaintiff may not legally take the moneys or the property of the telegraph company on account of her absence from the funeral and the mental anguish which resulted from that absence, unless the company's delay in delivering the message caused her absence; unless that delay made it impossible or impracticable, in the exercise of reasonable care, for her to be present.,* * * The excuses which she gives for her failure to do so are weak and frivolous. One's right of recovery for damages on account of the negligence of another is always conditioned by his own exercise of ordinary care to avoid the damages, after he knew they are impending, and where his exercise of such care would have prevented them, the failure to exercise it is fatal to recovery (citing authorities). * * * A careful perusal and analysis and a thoughtful consideration of all the testimony in this case has driven our minds with compelling force to the conclusion that there is no substantial evidence in it that the delay in the delivery of the telegram caused the absence of the plaintiff from the funeral of her father or the anguish she endured on that account. That negligence had spent its causal force at 11 o'clock on Saturday night, when she knew all the facts that the telegram communicated, and had ample time to reach Hot Springs hours before the funeral of her father. * * * Neither the preceding nor the subsequent delay of the telegram could have prevented her from embracing this opportunity, or from using the ample means to reach Hot Springs before the funeral that were at her command. If she failed to take advantage of the former, or avail herself of the latter, the cause of that cause was not the negligence of the telegraph company, but her own indisposition or failure to exercise ordinary care for her to do so."

In the case at bar, it appears that the plaintiff lives in Birmingham, Ala., where also resides his mother in an adjoining house, while his grandmother (the mother of his mother), whose death the delayed telegram announced, resided and was at the time of her death at Social Circle in the state of Georgia. On January 2, 1913, plaintiff's mother received at Birmingham the following telegram from a relative at Social Circle, Ga., to-wit: "Your mother is dying. Come on first train." In pursuance of this telegram, plaintiff's mother left that day on the first train

for Social Circle, but before leaving she informed plaintiff, her son, who accompanied her to the depot, of the receipt and contents of the foregoing message. Plaintiff says that he did not join his mother on the journey because he had an engagement for that day, January 2d, the day his mother left, to meet and settle with one Kellogg for rents that he had been collecting for him, fearing, he says, that if he did not fill the engagement, Kellogg, who was an out of town client, due to arrive that day for settlement, might think him dishonest, and knowing, too, he says, that darkies, as the plaintiff and relatives were, sometimes get unduly scared over the condition of a relative and announce that he or she is dying when such is not a fact, which he thought might be the case as to the telegram received by his mother. Hence, for these two reasons, plaintiff says he did not accompany his mother, but instructed her, at the time she left, to wire him, immediately upon her arrival in Social Circle, as to the condition of his grandmother, stating that in the event she was dead he would leave the next day for the funeral. Plaintiff's mother arrived in Social Circle late that night of the day she left (January 2d), and, finding her mother dead, but defendant's telegraph office closed for the night, she early the next morning (the morning of January 3d), so soon as defendant's office opened, which was at 7:30 a. m., delivered to defendant, through her daughter, for transmission to plaintiff at Birmingham, charges "collect," the following telegram, which is the suit message, to-wit: "She [meaning her mother and plaintiff's grandmother] is dead."

The plaintiff's evidence tends to show that if this message had been transmitted and delivered with reasonable diligence, the plaintiff would have received it at such an hour on January 3d that he could have caught a train out of Birmingham for Social Circle on that day, in ample time to have reached the latter place for the funeral, which took place on the afternoon of January 4th, and that he would have done so, but that by reason of the negligence of defendant the telegram was not delivered until 3 or 4 o'clock on the afternoon of January 4th, when it was entirely too late for plaintiff by any means to reach Social Circle in time for the funeral.

It appears that the plaintiff lived with his grandmother from childhood until he was 21 years old, when he removed to Birmingham, where he has been living ever since (about 7 years), engaged in running a little family grocery store, living with his

wife in the rear of the building, and also engaged in collecting rents for one Kellog, said out of town client, who came to Birmingham for settlement about once every six months, and with whom plaintiff had the before mentioned engagement on January 2d. It further appears that plaintiff, failing to receive the telegram of January 3d sent by his mother, and not knowing that it had been sent, and failing to hear anything as to the condition of his grandmother after his mother left, on January 2d, did on January 4th wire his mother as follows: "How is Grandma? Answer immediately"—and did later, on January 4th, before the telegram in suit was delivered to him, call his mother up over the long-distance phone, to inquire as to the condition of his grandmother and ascertain why his mother had not wired him as she had promised. He then learned of his grandmother's death, but it was too late for him to attend the funeral.

Under these facts and circumstances, different as they are from the facts dealt with in the cases we have discussed, we are unwilling to say, as a matter of law, what the court in effect said in those cases, and that is that plaintiff was not prevented by defendant's negligence from attending his grandmother's funeral, but was prevented by his own indisposition. In this case, whether it was the one or the other (there being, as seen, facts and circumstances from which either might be inferred) was a question for the jury. However, we may say that, even though the jury reach the conclusion that plaintiff was prevented by defendant's negligence and not his own indisposition from attending his grandmother's funeral, they might, in ascertaining whether on that account he suffered mental anguish, and, if so, in ascertaining the extent of it, weigh the fact that plaintiff did not, when informed of the dying condition of his grandmother through the mentioned telegram to his mother, go immediately to her bedside, which if he had done he would have been sure and certain of being there in time for the funeral, but chose, for reasons given by him, as before stated, to take the risk of waiting to go until he had received information of her actual death, knowing, as all do, the possibilities of delay in the transmission and delivery of such information, and that a slight delay might preclude him from making connections and reaching Social Circle in time for the funeral. Plaintiff's willingness to let an engagement with Kellogg, which for aught to the contrary appearing could have been easily and satisfactorily changed by wire to

another date, and from which Kellogg, under the circumstances, would no doubt have excused him, as well as his willingness not to rely upon the trustworthiness of the information as to his grandmother's dying condition, imparted in the mentioned tele-. gram which he saw from his sister to his mother, as well as his willingness to risk getting further and later information prompt-ly, argues strongly that plaintiff did not anticipate that he would suffer any great amount of mental anguish if he failed to get to his grandmother's funeral, and that his failure did not, in fact, entail any great amount of such anguish. To say the least, those facts demonstrate that plaintiff's affection for his grandmother and his desire to attend her funeral were not so compelling as to be impulsive, but were coldly calculating, against which he was willing to weigh, and did weigh, the value of his engagement with Kellogg and the possibilities of a mistake in the message to his mother, deciding, after such weighing, that if he could fill his engagement with Kellogg, and that if he could then get informa-tion that his grandmother was actually dead, and this in time for him to get to Social Circle soon enough for the funeral, he would go; otherwise, he would rather endure the mental anguish of not attending the funeral. We would not say that he suffered none, but it does occur to us that he put his own estimate on the amount of it, when he chose to fill his engagement with Kellogg rather than go with his mother to the bedside of his grand-mother, when he was first informed of her dying condition, and when he knew if he went then he would be sure to be in time for the funeral, and that, if he did not, the possibilities, at least, were that he would not get there in time. He valued the engagement with Kellogg, coupled with uncertainty as to whether he could fill it and attend his grandmother's funeral, more than he did the certainty of attending her funeral. While these considerations are pertinent in estimating the amount of plaintiff's damages for mental anguish, they are not conclusive that he suffered none at all, as is urged by defendant's counsel. They are mere mat-ters of argument for consideration in determining as to what amount of damages, if any, plaintiff should be allowed for mental anguish. As to whether, when weighing them, we would con-clude that the damages as assessed by the jury were excessive need not be decided, since the judgment has to be reversd for other reasons, which is accordingly done.

Reversed and remanded.