# Western Union Telegraph Co. *v.* Royal.

### Delay in Delivering Telegram.

(Decided December 19, 1916.   Rehearing denied January 12, 1917.
74 South. 94.)

1. **Telegraphs and Telephones; Nondelivery; Contract.**—Where the telegram which was written on a blank containing the stipulation against delivery outside a half mile limit, relied on by defendant, was not positively identified as the original telegram which defendant undertook to transmit, and the only other evidence on that issue was the testimony of the agent of defendant, and this testimony did not prove the stipulation literally as pleaded, nor show that the blank referred to in his testimony contained the stipulations, the court could not say as a matter of law that the stipulation was a part of the contract, but that was a question for the jury.

2. **Same; Evidence; Question.**—Where the action was for failure to deliver a telegram, and the defense was that the addressee livd outside the limits within which defendant undertook to deliver, evidence as to the custom of defendant to deliver outside these limits where it knew the residence of the addressee, was sufficient to justify the refusal of the affirmative charge.

3. **Same; Damages; Mental Anguish; Knowledge.**—Where the telegram announced that the sender would go to attend his son's funeral, which telegram the company failed to deliver, after transmitting other telegrams which informed the company of the situation surrounding the party, the company's liability for the mental anguish caused by a failure of the sender to attend his son's funeral, is not defeated by the fact that the funeral was held because of a failure to hear from plaintiff at an hour earlier than that stated in one of the delivered telegrams, as the company could not rely on the stated time for the funeral, or assume that it would not be changed.

4. **Same; Instructions.**—Where the action was for the failure to deliver a telegram and the defense was that the sendee lived outside the delivery limits, but there was a replication alleging a custom to deliver beyond the free delivery limits, a charge asserting that it was not the duty of the agent of defendant to know the residence of parties living outside the free delivery limit, ignored the issue as to the custom set up in the replication, and was properly refused.

5. **Same.**—In such a case a charge asserting that if the operator in writing out the message on one of the company's blanks did so as the agent of the sender, the jury could not find for plaintiff, was properly refused.

APPEAL from Montgomery Circuit Court.

Heard before Hon. W. W. PEARSON.

Action by J. O. Royal against the Western Union Telegraph Company for damages for delay in the delivery of a telegram. Judgment for the plaintiff, and defendant appeals. Affirmed.

[Western Union Telegraph Co. v. Royal.]

A telegram dated at Sprague, Ala., and addressed to A. B. Perdue at Hartford, Ala., "Will leave here in the morning for Hartford," was not delivered in a reasonable time. The complaint avers further that several telegrams had passed between the parties relative to the illness and death of plaintiff's son at Hartford, and that the telegram above set out was sent in order that Perdue might know that plaintiff was coming, and so delay the funeral until plaintiff could arrive; that all the telegrams were handled by the same operator, both at Sprague and at Hartford; and that defendant knew or had notice that a failure to deliver said telegram within a reasonable time would probably result in great grief and mental anguish to plaintiff.

The substance of plea 3 appears in the opinion. The replication to plea 3 was that, at the time said telegram was received by defendant at its Hartford office, it was the custom of defendant to deliver telegrams beyond the free delivery limit established by said defendant for the government of the Hartford office, and within limits within which said A. M. Perdue resided without requiring any previous request for the payment of any extra charge on the part of the sender. The oral charge of the court in this connection is as follows: "If you reasonably find from the evidence here that Perdue lived three-quarters of a mile from the office, and that it was customary on the part of defendant to deliver messages of this sort free of charge, free of extra charge, within a radius of three-quarters of a mile, then the fact that the house was beyond the half-mile limit would not be a defense in this case."

It appears that the original hour of the funeral was 2 p. m., but that the funeral was changed and had at 10:30 a. m.; Perdue testifying that the funeral was changed because his brothers had come in during the night, and they were not expecting his father, as we had not then heard from him. The funeral was held on the 10th, the day following the filing of the telegram referred to.

The following charges were refused to defendant:

(2) If the jury believe the evidence in this case, they must not award plaintiff any sum on account of any mental pain or anguish that you may find from the evidence that plaintiff suffered by reason of the acts or omissions of defendant mentioned in the complaint.

(5) While, under the law, it was the duty of defendant's manager at Hartford to know the residence of those living within

one-half mile of defendant's office there, it was not his duty to know the residence of parties living outside those limits.

(4) If you believe from the evidence in this case that the operator Johnson, in writing out the message on one of defendant's blanks, did so as the agent of Royal, the sender, you cannot find a verdict for plaintiff.

RUSHTON, WILLIAMS & CRENSHAW, for appellant. HILL, HILL, WHITING & STERN, for appellee.

BROWN, J.— (1) The telegram offered in evidence, dated, "Sprague, Ala., July 9, 1914," purporting to have been written on a blank containing the stipulation set up in the defendant's special plea 3, to wit:

"Telegrams will be delivered free within one-half mile of the company's offices in towns of 5,000 population or less. Beyond these limits the company does not undertake to make delivery, but will without liability, at sender's request, as his agent and at his expense, endeavor to contract for him for such delivery at a reasonable price," which was not positively identified as the original telegram which the defendant undertook to transmit and deliver for plaintiff. The telegram not being positively identified as the original, its identity was left to inference, and hence was a question for the jury. The only other evidence touching the subject as to what the blanks used by the defendant contained was that of the defendant's agent Quillian, whose testimony does not prove literally the stipulation as pleaded; nor does his testimony show that the blanks referred to in his testimony contained the statement that the telegram had been taken by the telegraph company subject to the stipulation as averred in the plea. Therefore the court could not say, as a matter of law, had there been no replication to this plea, that the defense set up was sustained by the undisputed evidence.

(2) Furthermore, there was some evidence tending to sustain the plaintiff's special replication to the defendant's special plea 3. The defendant's agent, who testified that he had been in its employ for 20 years, further testified to facts tending to show that it was a custom for the defendant's agent to deliver messages at Hartford outside of the free delivery limits when the residence of the sendee was known, and without extra charge; and the fact that the undisclosed purpose of the agent was for

[Western Union Telegraph Co. v. Royal.]

the accommodation of the patrons of the company would not change the effect of this evidence under the issues formed in this case. What we have said justified the court's refusal of the affirmative charge requested by the defendant, and in giving the instructions in the oral charge to which an exception was reserved.

(3) We cannot agree with the contention of appellant that the fact that the hour for the funeral service was changed without notice to it relieved it of liability for damages for mental anguish suffered by the plaintiff, when, if the message had been promptly delivered, the hour for the funeral might not have been changed and the damage averted.

The contract for the transmission of the telegram from Perdue to Royal, which was promptly transmitted and delivered, advising Royal of his son's death and the time fixed for the funeral, and the one with Royal for transmission and delivery of the telegram from Royal to Perdue advising when Royal would embark on his journey, were two separate and distinct transactions; and, while the fact of the sending of the first message was admissible as evidence showing that Royal's presence was desired at the funeral, it cannot be made a predicate to excuse the defendant's negligence in failing to promptly transmit and deliver the telegram from Royal to. Perdue. When the defendant accepted this telegram, the contract which the law implies from the transaction imposed on it the duty to promptly transmit and deliver it to the sendee. It had no right to rely on the fact that the funeral was not to take place until 2 o'clock, or assume that the time would not be changed. As we have said, the fact that Perdue sent the first telegram to the plaintiff was evidence that his presence at the funeral was desired and clearly authorized the jury to draw an inference that the time of the funeral would not have been changed if the defendant had promptly transmitted and delivered the telegram in question. Charge 2 was therefore refused without error.

(4) Charge 4 ignores the issues presented by the special replication, and was properly refused.

(5) There was no error in refusing charge 5.—*W. U. T. Co. v. Hawkins*, 14 Ala. App. 295, 70 South. 15, is overruled in *W. U. T. Co. v. Morrison, infra*, 74 South. 88.

No error appearing in the record, the judgment is affirmed.

Affirmed.