## NATIONAL SURETY CO. v. JULIAN.
### 6 Div. 241.

Supreme Court of Alabama.

Oct. 12, 1933.

Rehearing Denied Nov. 9, 1933.

Cabaniss & Johnston, of Birmingham, for appellant.

Coleman, Spain, Stewart & Davies and Frank M. Young, all of Birmingham, and W. L. Bryan, of Atlanta, Ga., for appellee.

KNIGHT, Justice.

Suit by Frank N. Julian, as receiver of the Citizens' Life Insurance Company, against the National Surety Company, to recover for losses alleged to have been sustained by the Citizens' Life Insurance Company through the fraud, dishonesty, forgery, theft, embezzlement, etc., of three named officers or employees of said company. It is made to appear from the pleadings that the appellant had, on the 12th day of March, 1929, executed to the named life insurance company a certain bond or contract whereby the appellant agreed to indemnify the insurance company against the loss of any money or other personal property through the "fraud, dishonesty, forgery, theft, embezzlement or wrongful abstraction" of any employee named in the schedule attached to the policy. In the attached schedule, Joe F. Little, president, J. L. Moore, general manager, and Clyde V. Scott, auditor, were named as the employees, who were covered by the bond.

As originally filed, the complaint contained four counts, and each was based upon the bond, though it was not set out in extenso in any of the original counts. Thereafter the plaintiff amended his complaint by adding or attaching thereto a copy of the bond and schedules sued on, and by adding counts 5, 6, 7, 9, and 10. Subsequently, the plaintiff withdrew each of the four original counts of the complaint, and the cause thereafter proceeded to trial upon the five added counts, and other pleading hereinafter to be mentioned.

We deem it essential to a proper understanding of the case that the pertinent provisions of the bond should be here set out, and we will therefore, at the expense of brevity, set forth those provisions of the contract over which a greater portion of the contention has arisen. They are:

"The National Surety Company (surety), for an agreed annual premium, hereby agrees to indemnify Citizens Life Insurance Company of Huntsville, Alabama (employer), against the loss of any money or other personal property, (including money or other personal property for which the employer is responsible), through the fraud, dishonesty, forgery, theft, embezzlement, or wrongful abstraction of any employee named in the schedule attached or added thereto by acceptance notice, in the performance of the duties of any position anywhere in the employer's service, committed alone or in connivance with others, while this bond is in force as to such employee.

"The foregoing agreement is subject to the following conditions:

"1. The term of this bond begins on the 8th day of March 1929 and continues in force until terminated or canceled as hereinafter provided. Unless each premium charged, actually be paid to the surety or its duly authorized agent within sixty (60) days after the same shall have become due and payable, this bond shall become void as to further liability, from the last anniversary of the date effective up to which the premium shall have been paid in full.

"2. Without prejudice to the rights of the employer as respects anything that may occur during the period this bond is in force, the surety may at any time cancel its further liability for any or all employees, effective thirty (30) days after receipt by the employer of written notice to such effect. The employer may cancel this bond as to further liability for any or all employees, by written notice to the surety, effective upon its receipt. In case of any termination of liability, the unearned part agreed upon of the premium paid shall be returned to the employer, except as to any employee causing loss hereunder. The check of the surety or its representative served on or sent by mail to the employer, shall be a sufficient tender of such unearned premium.

"3. In the event of the death of any employee during the term of this bond, or of the suspension, dismissal, or retirement of any employee from the service of the employer during said term; or upon any employee entering into partnership relations with the employer, this bond shall thereupon terminate automatically as to such employee with-

out any action on the part of the surety. The right to give notice of a claim hereunder shall cease at the end of six months after the termination, expiration, or cancellation of this bond as to any employee.

"4. Upon the discovery by the employer of any evidence of any dishonest act on the part of any employee, the employer shall, at the earliest practicable moment, and at all events not later than five days after such discovery, give written notice thereof addressed to the surety at its home office. Affirmative proof of loss under oath, together with full particulars of such loss, shall be filed with the surety at its home office within three months after such discovery and shall be verified and paid by the surety within sixty (60) days after receipt thereof. Legal proceedings for recovery hereunder may not be brought until three months have elapsed after such proof of loss shall have been filed with the surety, nor brought at all unless begun within six months after so filing such proof of loss. Should any limitation set forth herein be void under the law of any place governing the construction hereof, then such limitation shall be the shortest period permitted by such law.

"5. Upon the discovery by the employer of any evidence of any dishonest act on the part of any employee while so employed or otherwise, this bond shall terminate, without any action on the part of the surety, as to any act committed thereafter by such employee."

Inasmuch as the counts of the original complaint were withdrawn by the plaintiff, after demurrer filed thereto, we are not, of course, concerned with their sufficiency.

Count 5 of the amended complaint seeks a recovery of the defendant in the sum of $8,500, and in which it is alleged that the plaintiff suffered a loss of money or other personal property in the amount of, to wit, $8,500, in that, "on divers and sundry dates, from March 8th, 1929, to November 1st, 1929, moneys and properties in amount exceeding in value the sum of $8,500.00 were taken from the Citizens Life Insurance Company and wrongfully converted by the said Little to his own use, or to the use of others; and the defendant has breached the conditions of said bond in that it has failed and refused to pay to the plaintiff the amount of said loss," etc. The bond is made a part of this count, as well as of the remaining four counts of the complaint.

Count 6 was the same as count 5, except it is there charged and averred that the loss sought to be recovered was suffered by the plaintiff by reason of the dishonesty of J. L. Moore, the general agent of the plaintiff at the time.

Count 7 is similar, in averment, to counts 5 and 6, except in count 7 a loss of $8,000 is averred to have been sustained, and for which in said count a recovery is sought, by reason of the dishonest conduct of Clyde V. Scott, the bookkeeper and auditor of the plaintiff.

In the ninth count it is averred that, among other things, J. L. Moore, in the performance of his duties in the service of the Citizens' Life Insurance Company, connived with the dishonesty of Joe F. Little, and others unknown to the plaintiff, causing a loss to the insurance company of $8,500. And count 10 is the same as count 9, except in count 10 it is alleged that Clyde V. Scott was guilty of the connivance with said Little, which caused a loss to the insurance company of $8,500.

Counts 9 and 10 each omit the averment: "And the defendant has breached the conditions of the said bond in that it has failed and refused to pay to the plaintiff the amount of said loss," which appears in counts 5, 6, and 7.

The defendant interposed numerous grounds of demurrer to the complaint, and to each count thereof, separately and severally.

█ It is first urged against the sufficiency of the several counts that, inasmuch as the condition in the bond that the obligee should give affirmative proof of loss under oath to the surety at its home office was a condition precedent to defendant's duty to perform, the several counts should have averred the giving of this affirmative proof of loss within three months after discovery of the loss, and, being omissive of such an averment, the several counts were defective. For like reasons, it is insisted that the several counts were insufficient for failing to aver that written notice was given to the defendant within five days after the discovery of the dishonest act; and for failing to aver that notice of the claims under the bond were filed with the company within six months after the termination of the bond.

And it is further insisted that counts 9 and 10 were defective and subject to demurrer for their failure to aver the following facts: That notice was given defendant within five days after the discovery of the dishonest act; that affirmative proof of loss was submitted within three months after the discovery; that notice of the claim was given the defendant within six months after the termination, expiration, or cancellation of the bond; and that a demand for payment was made upon, and payment refused by, the defendant.

The whole structure of appellant's argument against the sufficiency of the several counts is grounded upon the contention that the several conditions of the policy, which have been set out in hæc verba in this opinion, are conditions precedent, and not subsequent; that, being conditions precedent, the burden of averment and proof was upon the plaintiff. Appellant's argument is sound if,

as contended for by it, the several provisions constitute, in fact, conditions precedent.

Are the quoted conditions in a contract, such as the one under consideration, conditions precedent, requiring the plaintiff to aver performance therewith, or that the defendant has waived performance thereof?

The nature of the contract, and purposes to be effected, whether a suretyship, or whether an indemnity or insurance against loss is created thereby, must, of course, be given due consideration, in determining whether the language employed creates conditions precedent or subsequent. We are aware of the fact that in some states of the Union, as well as in some federal circuits, it has been held that the language employed in the contract now before us creates conditions precedent, a compliance with which plaintiff must aver in his complaint, in order to state a case against the defendant.

Counsel for appellant, in his splendid brief, admits that he has found no case in Alabama which construes a provision in a fidelity bond, such as is now before the court, and, accordingly, on this point, this case is one of first impression in this state.

If, as contended for appellant, the several provisions of the contract did in fact create conditions precedent, it would necessarily follow that the court erred in overruling the defendant's demurrer, for this demurrer fully and aptly raised the question.

But, we repeat, was the contract one of suretyship, or one of indemnity or insurance? If the contract should be construed as a contract of insurance against loss by reason of the dishonesty and faithlessness of an employee, then, as a matter of course, those canons or rules of construction, applicable to insurance contracts, must be applied in determining a proper construction of the provisions of the contract.

In 5 Couch on Insurance, 1199-a, p. 4325, we find and excerpt the following: "In the first place, it is now fairly well settled, by at least the decided weight of authority, that bonds or contracts which guarantee the fidelity of employees, fiduciaries, officials, etc., if written for profit, and in the course of business undertaken therefor, are essentially insurance contracts rather than contracts of strict or pure suretyship, and should be construed as insurance contracts, so that the rights and liabilities of the parties are governed, in case of uncertainty or ambiguity as to meaning, by the insurance rule of liberal construction in favor of the insured, and the indemnity contracted for, rather than by the rule of strictissimi juris, which determines the rights of ordinary guarantors or sureties who have become such without pecuniary consideration."

Likewise, in 25 Corpus Juris, p. 1029, the principle is there stated: "Whatever the form of the contract, it is well established that guaranteeing the fidelity of employees and persons holding positions of trust is a form of insurance, and that such contracts are subject to the rules applicable to insurance contracts generally."

In our own case of Craft v. Standard Accident Ins. Co., 220 Ala. 6, 123 So. 271, 272, it was held:

"One of the distinguishing features between a contract of, suretyship and one of guaranty or indemnity is that a contract of suretyship is the joint and several contract of the principal and surety, while the contract of a guarantor is his own separate undertaking, in which the principal does not join. Saint v. Wheeler & Wilson Mfg. Co., 95 Ala. 372, 10 So. 539, 36 Am. St. Rep. 210; J. W. Watkins Medical Co. v. Lovelady et al., 186 Ala. 414, 65 So. 52.

"Another element distinguishing a contract of suretyship from one of indemnity or insurance is that the principal is liable over to the surety in the event of payment by the latter, as a matter of law independent of the doctrine of equitable subrogation. Martin v. Ellerbe's Adm'r, 70 Ala. 326; Riley v. Stalworth, 56 Ala. 481; U. S. Fidelity & Guaranty Co. v. Charles et al., 131 Ala. 658, 31 So. 558, 57 L. R. A. 212; 21 R. C. L. 1097, § 134; Brown v. Melloon, 170 Iowa, 49, 152 N. W. 75, Ann. Cas. 1917C, 1070, and note, 1073.

"Judged by this test, the contract here is one of indemnity or insurance, and not of suretyship. Mrs. Jones was not a party to the contract, nor was it contemplated that she should be [just as in the present case]. Her liability to the plaintiff, if liable at all, arises from her wrongful withdrawal and appropriation to her use of the money covered by the check, a tort; while defendant's liability is purely contractual—a liability assumed in consideration of premiums paid, to *indemnify or assure* the plaintiff against loss resulting from the infidelity of plaintiff's employee, Mrs. Jones. Frost on Guarantee Insurance, §§ 27–30; Alabama Fidelity & Casualty Co. v. Alabama Penny Sav. Bank, 200 Ala. 337, 76 So. 103; Illinois Surety Co. v. Donaldson, 202 Ala. 183, 79 So. 667; 25 C. J. 1089, § 2; Tebbets v. Mercantile, etc., Co. (C. C. A.) 73 F. 95; Young v. American Bonding Co., 228 Pa. 373, 77 A. 623; First National Bank v. National Surety Co., 228 N. Y. 469, 127 N. E. 479."

The case of *Sales Corporation v. United States Fid. & Guar. Co.*, 215 Ala. 198, 110 So. 277, 278, was one in which the United States Fidelity & Guaranty Company, for a premium paid it, undertook to indemnify the Denegre Car & Truck Company against pecuniary loss by reason of the fraud or dishonesty of one Samuel Robinson Sneed, who was then in the employ of the said company. This court, in construing the contract, used this pertinent language: "Contracts of guaranty, especially

when based upon a valuable consideration moving to the guarantor, are not like contracts of ordinary suretyship, but are construed more strongly against the guarantor, when their language is ambiguous and susceptible of more than one meaning. Scott v. Myatt, 24 Ala. 489, 495, 60 Am. Dec. 485; Russell v. Garrett, 204 Ala. 98, 85 So. 420; 28 Corp. Jur. 933, § 79. This is a contract of indemnity insurance, and this court has held that it must be construed as are other contracts of insurance, i. e.: 'All fair doubts are to be resolved in favor of the party to be indemnified.' Ala. Fid. & Cas. Co. v. Ala. Penny Sav. Bank, 200 Ala. 337, 76 So. 103 (10th headnote); 31 Corp. Jur. 426, § 18."

■ It must be borne in mind that the conditions set forth in the contract now before the court do not say in terms, nor by necessary implication, that the conditions annexed to or recited in the instrument are to be treated or construed as conditions precedent to liability, nor is it provided therein that the failure to observe the conditions shall work a forfeiture of the obligee's right of indemnity. It must likewise be borne in mind that the contract was written by the guarantor, and under our uniform holding must be construed liberally in favor of the assured. Sales Corporation v. United States Fid. & Guar. Co., supra, and cases there cited. Only in one particular, among the enumerated conditions, is it provided that failure to comply therewith shall make the contract become void, and that provision is as follows: *"Unless each premium charged, actually be paid to the surety or its duly authorized agent within sixty (60) days after the same shall have become due and payable, this bond shall become void as to further liability, from the last anniversary of the date effective up to which the premium shall have been paid in full."* (Italics supplied.) Then follow the other conditions, but which carry no such forfeiture conditions.

In our case of Fike v. Stratton, 174 Ala. 541, 56 So. 929, 934, this court had occasion to deal with "exceptions" and "provisos" in contracts, and we there said, speaking through the present Chief Justice: "We think the true test, however, whether it be called an 'exception' or 'proviso,' is whether or not it is a condition precedent to liability, or whether or not it is a condition subsequent going to defeat the plaintiff's action once vested, or if the existence or nonexistence of the condition is essential to a breach of the contract, or merely affords a defense for a failure to comply with same or for a breach of same. If it is a condition precedent, it should be set forth in the declaration, and can be met by a general denial. *If it is not a condition precedent to a breach, but merely justifies or excuses a breach in certain instances or for certain causes, it is defensive matter, which need not be negatived or set out in the declaration.* Ty-

son v. Weil, 169 Ala. 558, 53 So. 912 [Ann. Cas. 1912B, 350]." (Italics supplied.)

While in the case of Westchester Fire Ins. Co. v. Green, 223 Ala. 121, 134 So. 881, this court was dealing with a fire insurance contract, yet the rule of construction there applied may well be applied to the case now before us. In the Westchester Fire Ins. Co. Case we held that the provision requiring that proof of loss should be given within sixty days after the fire did not avoid liability under the policy, if the required proof was not furnished within the prescribed period, but would only postpone the right to sue on the policy until the proof was furnished. This conclusion was reached by this court upon the ground that the provision for such proof was not made a condition of forfeiture, nor was there any other provision in the policy prescribing a penalty for failure to comply with it. In support of our conclusion in that case, on this point, the following authorities were cited: 26 C. J. 373, 374; 14 R. C. L. 1328, § 501; 7 Cooley's Briefs on Ins. pp. 5766, 5767; Taber v. Royal Ins. Co., 124 Ala. 681, 691, 26 So. 252, 260; Royal Exch. Assur. Co. v. Almon, 206 Ala. 45, 89 So. 76.

In the case of Taber v. Royal Ins. Co., supra, speaking to this feature of an insurance contract, this court observed: "The omission to give such notice [that is, immediate notice of loss] was not by the policy an express term of forfeiture, and, without that, the law would be slow to apply any strictness of construction to work a forfeiture, in the absence of any allegation or possibility of damage."

The rule of construction applied in the Westchester Fire Ins. Co. Case, supra, with reference to conditions in a contract of insurance, has been reaffirmed by this court in the case of Home Ins. Co. of N. Y. v. Murphy, 223 Ala. 566, 137 So. 393.

Whatever may be the rule declared by the courts of some of the states, and by the federal courts in some of the circuits, we are of the opinion, and so hold, that the conditions set forth in the contract now before us for construction are not conditions precedent to liability, but present purely defensive matter. Therefore it was not essential that the plaintiff, in its declaration, should have averred compliance with said conditions. The failure to comply with the recited conditions must be presented by appropriate pleading on the part of the defendant. It therefore follows that the court committed no error in overruling defendant's demurrer to the several counts of the complaint, which challenged the sufficiency of the counts for failing to aver compliance by the plaintiff with conditions of the contract in the several particulars indicated by the demurrer, and pressed in brief. With its demurrers to the several counts of the

complaint overruled, the defendant filed a number of pleas, some of which, on demurrer, were held to be bad.

■ The defendant's first insistence, with respect to the court's ruling on demurrers to its pleas, is that error occurred, to its prejudice, in the sustaining of plaintiff's demurrer to plea 5 as an answer to count 5. This plea appears in the report of the case, and therefore it is not necessary to here reproduce it in terms. The plea avers that the plaintiff discovered, on, to wit, the 1st day of June, 1929, "evidence of a dishonest act on the part of the employee Joe F. Little," and the plea then avers "that according to the conditions contained in said bond, said bond terminated on the date of such discovery." It will be observed that the above stated averment is made the predicate for the following additional averment of fact and conclusion thereon by the pleader, viz.: "Defendant further avers that neither Citizens Life Insurance Company, nor the plaintiff gave notice to the defendant of any claim under said bond until more than six months after the date on which said bond terminated by reason of the discovery of the Citizens Life Insurance Company of a dishonest act on the part of the employee, Joe F. Little."

It will be observed that the plea nowhere states in what the alleged dishonest act consisted, nor that the act in question was committed in and about the business of the Citizens' Life Insurance Company, nor does the plea aver that the failure on the part of the Citizens' Life Insurance Company to give notice to the defendant within six months after the termination of the bond, as to the employee Little, created a bar to this suit, or worked a forfeiture of the right to recover of the defendant for loss sustained by reason of the wrongful conduct of the said Little. We hold the plea insufficient as an answer to count 5, and subject to one or more grounds of the demurrer directed to it. The court therefore committed no error in sustaining plaintiff's demurrer to said plea.

■■ It is next insisted in brief that the court committed error to reversal in sustaining plaintiff's demurrer to pleas 18, 12e, 12f and 12g, each of which attempted to set up and charge to the Citizens' Life Insurance Company fraud in the procurement of the bond sued on.

We think the said pleas were each defective and subject to one or more of the grounds of demurrer, in failing to aver the facts showing, or tending to show at least, that the employees were, in fact, unreliable, deceitful, dishonest, or unworthy of confidence, or that the habits of the employees were not good, or in failing to allege that the representations were made by officers or agents of the company other than those whose fidelity was the subject of the insurance.

Pleas charging fraud must state the facts, and not be based upon conclusion of the pleader.

"Fraud is a conclusion of law from facts stated and proved. When it is pleaded, at law, or in equity, the facts out of which it is supposed to arise must be stated; a mere general averment, without such facts, is not sufficient. The court cannot, on such averment, pronounce judgment." Flewellen v. Crane, 58 Ala. 627, 629; Pickett v. Pipkin, 64 Ala. 520, 523; Quarles v. Campbell, 72 Ala. 64; Meadows v. Meadows, 73 Ala. 356, 358; Phœnix Ins. Co. v. Moog, 78 Ala. 284, 56 Am. Rep. 31.

It will be noticed that the court overruled plaintiff's demurrers to defendant's pleas 14a, 14b, and 14c, each of which charged fraud to the Citizens' Life Insurance Company in the procurement of the bond. These pleas set up substantially the same defense as to the dishonesty of the employees, which was known to the obligee in said bond, and falsely misrepresented to the defendant, as did pleas 18, 12e, 12f, and 12g. And it only remains to be said in this connection that the defendant offered not one iota of evidence, under any of its pleas of fraud, to show or to substantiate a single averment therein. In fact, the defendant made no pretense whatever to show fraud in the remotest degree in the procurement of the bond. With pleas 14a, 14b, and 14c in the case thus opening wide the door for proof of such fraud, it is rather surprising that no attempt was made to substantiate the pleas, if there was any basis in fact for said pleas. Going v. Ala. Steel Wire Co., 141 Ala. 537, 37 So. 784.

■ This brings us down to a consideration of the sufficiency of defendant's plea 19.

It is a settled rule of law in this state that, if an employer has knowledge of previous dishonesty of an employee and accepts the bond of an indemnitor for the employee's future fidelity in the employer's service, without disclosing such knowledge to the innocent indemnitor, a fraud is committed against the indemnitor, and he will not be bound on the bond. Saint v. Wheeler, 95 Ala. 362, 381, 10 So. 539, 36 Am. St. Rep. 210; London Gen. Omnibus Co. v. Holloway, [1912] 2 K. B. 72, Ann. Cas. 1912D, 1280; Ala. Fid. & Cas. Co. v. Ala. Penny Savs. Bank, 200 Ala. 337, 76 So. 103. The compelling reason for holding that such concealment, at the time the surety enters into the obligation, would discharge the surety, is that it is only reasonable to suppose that such a fact, if known to him, would necessarily have influenced his judgment as to whether he would enter into the contract or not.

The rule of nonliability in such a case is abundantly supported by authority and reason. However, like other pleas of fraud and fraudulent misrepresentations, the plea must set forth the facts relied upon to show the concealment and deception and ignorance of the true conditions by the indemnitor with particularity, and not left to rest upon inference, argument, or conclusion. Measured by the rule of requirement in this particular, we think the plea falls short of informing the opposite side of the facts relied upon to show the fraud, dishonesty, etc., of the employees, nor does it give any information as to which of the employees had been guilty of fraud, dishonesty, etc., since it avers "that the employees to whom the bond was to be applicable or one or some of them" without designation of any particular one.

The appellant was evidently under some apprehension that such objection might be made to the plea, for, to meet this, he has argued that no apt ground of demurrer was interposed thereto, raising this question. We are fully persuaded, however, that the demurrer raises the question. It therefore follows that the appellant can take nothing by this assignment of error.

■■■■ The appellant next makes the insistence that the court improperly overruled its demurrer to plaintiff's third replication. This replication is in the following language: "That after the happening of the matters and things set up in said plea defendant, with full knowledge of said facts, entered into negotiations with the Citizens Life Insurance Company for the adjustment of the liability under said contract, and the Citizens Life Insurance Company was thereby induced to incur trouble and expense in and about the negotiations for the adjustment of liability under said contract and securing facts in relation thereto."

The defendant's demurrer takes the point that the allegation that the defendant entered into negotiations with the Citizens' Life Insurance Company for adjustment of its liability under said contract or bond is no answer to said plea, and said averments amount to no more than allegations that there was an offer to compromise. The demurrer further takes the point that the replication fails to set out the facts on which the conclusion is based that the defendant "entered into negotiations." Other objections to the sufficiency of the replication were made.

In the case of Queen Insurance Co. v. Young, 86 Ala. 424, 5 So. 116, 118, 11 Am. St. Rep. 51, it is held: "If the company, after knowledge of the breach, enters into negotiations or transactions with the assured which recognize and treat the policy as still in force, or *induces the assured to incur trouble or expense*, it will be regarded as having waived the right to claim the forfeiture." (Italics supplied.) This holding was reaffirmed in the case of Georgia Home Ins. Co. v. Allen, 128 Ala. 451, 30 So. 537. We hold that the replication was not subject to any ground of demurrer interposed thereto. In reaching this conclusion we are not unmindful of the fact that pleadings, against apt grounds of demurrer, must be specific and certain in their averments of the material facts, on which relief is predicated (Smith v. Smith, 216 Ala. 570, 114 So. 192), and that such facts must not be left to rest upon inference or intendment. (American-Traders' National Bank v. Henderson, 222 Ala. 426, 133 So. 36). But, where traversible material facts, upon which the relief is claimed, are stated with reasonable certainty, the rule is fully met and complied with, and we think, in view of our former pronouncement, the replication meets the requirement of good pleading in the particulars complained of.

■■■ Certain books or records of the Citizens' Life Insurance Company were duly and properly identified by evidence offered by the plaintiff in the cause. These books or records consisted of "cash" book, general ledger, journal, and record of mortgages. The three books mentioned were not all books of original entry. However, upon this subject, James R. Cothran, a witness for the plaintiff, testified in part: "I have as an actuary often checked the entire records of every account. I have worked as a special examiner of life insurance companies in connection with the State Department's official examination. * * * When the Citizens Life Insurance Company was first taken over by the court I examined a set of books of the Citizens Life Insurance Company that purported to show the details of the transactions of that character. Those books consisted of the cash book, the journal, the ledger, and a record of mortgages, which was reflected in the general ledger. All of those might be termed books of original entry or a method of keeping up with the individual accounts; those three items; that is, the journal voucher, the cash and journal register, and the general ledger are the three books that are necessary to the bookkeeping system of a life insurance company. There are many side lines but they are all reflected in the general set of books. The three books I have mentioned are not all books of original entry. The original entry is the journal voucher. From the journal voucher into the cash journal and the consolidation from the cash journal into the general ledger. That consolidation shows it by subjects."

The evidence abundantly shows that Clyde V. Scott was the bookkeeper of the Citizens' Life Insurance Company during the time that the above-mentioned books and records were made and kept, that the records were in his

handwriting, and that it was Scott's duty to keep the books and make the records.

The plaintiff was allowed, against the objection and exception of the defendant, to introduce in evidence some of the above-mentioned records, and testimony as to the contents of the others was also allowed to be given.

In the record we find an agreement was made by and between the respective counsel in regard to the testimony as to the contents of the books which were not offered in evidence. and this agreement is reflected in brief of counsel for appellant. In their brief, touching this testimony, we find and excerpt the following: "In accordance with agreement which has been made with counsel for the plaintiff, we wish to make it plain that we are not contending that error was committed in allowing testimony as to the contents of these records on the ground that the records themselves were not offered in evidence. Due to the size and number of the books of the Citizens Life Insurance Company it would have been practically impossible to prepare the record in this case if all of them had been introduced in evidence. Because of their bulk and complexity it was necessary that a shorthand rendition of their contents be given, and this was done."

However, it was contended by the defendant in the lower court, and the defendant contends here, that the proper foundation for the admission of the books and records under the shop book doctrine was not laid by the plaintiff, and hence the books themselves were inadmissible, and because the books could not have been introduced in evidence testimony as to their contents was likewise inadmissible.

In support of its contention that the testimony offered as to the contents of the books and the books themselves were inadmissible, counsel for appellant call to our attention the following cases: Stewart Bros. v. Harris, Cortner & Co., 6 Ala. App. 518, 60 So. 445; Western Union Tel. Co. v. Hawkins, 14 Ala. App. 295, 70 So. 12; Booker v. Benson Hdw. Co., 216 Ala. 399, 113 So. 256.

It must not be overlooked that this action was not a suit upon an account, in which it was sought to show the correctness of the account as against some third person. The present action, in its essence, involved frauds committed by certain employees of the Citizens' Life Insurance Company, the guarantor of whose fidelity the defendant was. These records, kept by Scott, the bookkeeper, and one of the parties whose fidelity the defendant had assured, show that divers large sums of money and properties of the Citizens' Life Insurance Company had been wrongfully and fraudulently abstracted or converted by Little to his own use, or to the use of himself, or other or others. The evidence tends to show knowledge on the part of said Scott that the books and records would and did disclose fraudulent acts of said Little, Moore, and himself.

■ Where fraud is involved, a wide latitude is permitted in the introduction of evidence. Of course, this latitude cannot be extended to allow evidence wholly foreign to the issue. But, subject to this limitation, it is proper "to admit any evidence which is competent by other rules of law, either direct or circumstantial, which in the opinion of the court has a legitimate tendency to prove or disprove the allegations in issue, the matter resting largely in the discretion of the trial court." 27 Corpus Juris, p. 50.

In 12 R. C. L. p. 176, it is stated: "Where fraud is alleged great latitude of proof is allowed, and every fact or circumstance from which a legal inference of fraud may be drawn is admissible. Any such fact no matter how insignificant may be shown provided it bears at all on the point in issue and is not wholly irrelevant."

The evidence in the record convinces us that Little, the president, Moore, the general manager, and Scott, the bookkeeper, were all in league, and in common purpose, to swindle and defraud the Citizens' Life Insurance Company, and succeeded to the extent of embezzling moneys and properties of that company to the extent of some $50,000 or upward. The evidence shows that Scott was a willing instrument in the hands of Little, and that Moore, a stockholder in the Union Guaranty Company, a corporation of which but little seems to have been known, which was made the fraudulent conduit, in a number of the unlawful and fraudulent abstractions, and general manager of the ill-fated Citizens' Life Insurance Company, was bound to have known of Little's frauds, and by nonaction, or silent acquiescence, aided in those frauds.

We think, and so hold, that under the ruling of this court in the case of Alabama Fidelity & Casualty Co. v. Alabama Penny Savs. Bank, 200 Ala. 337, 76 So. 103, the books kept by said Scott were admissible in evidence, and that under the agreement of counsel, the contents of the books, in lieu of the books, were likewise admissible.

■ The defendant does not contend that the evidence was insufficient to justify the court's holding that Little was guilty of dishonest conduct, which caused a loss of $8,500, but it does strenuously contend that the evidence did not support the court's finding that J. L. Moore and Clyde V. Scott, or either of them, were guilty of dishonesty causing any loss to the Citizens' Life Insurance Company. The defendant further contends that, if loss was in fact sustained by the Citizens' Life Insurance Company, by reason of the dishonesty of either said Moore or Scott, no notice of the claim for such losses under said bond, by reason of the disonesty of either said Moore or Scott, was given the defendant within six

months after the termination of said bond as to each of said parties—Moore and Scott. This defense, failure to give notice of the claim, was asserted in defendant's pleas 10 and 11.

We have indicated above what our conclusion and judgment was, and is, as to defendant's first contention. We are fully convinced by the evidence that the Citizens' Life Insurance Company was wrecked and ruined, its money and property to an enormous extent wrongfully abstracted and converted to his use, by the dishonest and criminal conduct of its president, Joe F. Little, aided and abetted in the wrong by the connivance of said Scott, as bookkeeper, in manipulating the books of the company, and by said Moore, the general manager, in permitting the wrongs with knowledge thereof.

■■ This then brings us down to a consideration of the only other contention made by the defendant against the correctness of the court's action in rendering judgment against defendant for losses on account of the alleged dishonesty of Moore and Scott, which contention is predicated upon the fact that no notice, as required by the terms of the bonds, of claims as to loss caused by the dishonesty of said Moore and Scott, was given the defendant within six months after the termination of the bond.

To state it more aptly, defendant contends that it fully proved, or proved to that degree of certainty required as to a negative plea, its pleas numbered 10 and 11.

On this point the appellant invokes the rule stated in 23 Corpus Juris, at page 27, which is: "A negative, from its nature, usually amounts to no more than approximate proof, and generally a negative fact is sufficiently proved prima facie by proving some affirmative fact or state of facts inconsistent with the affirmative of the proposition to be negatived and therefore raising a presumption that the negative is true."

We think, generally speaking, the stated rule is sound.

The evidence shows without dispute that the defendant had in the city of Huntsville, where the Citizens' Life Insurance Company had its home office, and where the president of the company, the general manager, bookkeeper, and general counsel resided, a resident agent, John T. Jones, who had authority to execute some bonds, fiduciary. It was to this agent that Mr. Earle Smith, general counsel for the Citizens' Life Insurance Company, first addressed a communication telling of probable losses under the bond. A copy of this letter was sent to Mr. L. A. Porter, state manager, 410 Bell building, Montgomery, Ala., and a copy to National Surety Company, New York, N. Y. Mr. Jones was not examined as a witness by the defendant to develop the fact that he received no notice of claim for loss as to said Moore and Scott, nor was it shown that he was not within the jurisdiction of the court. Mr. L. A. Porter, state manager, was examined by the defendant, but his testimony is far from satisfactory in showing that he received no such notice. We quote from his cross-examination:

"Mr. Jones had authority to execute some bonds, fiduciaries and plaintiff's court bonds. We gave him a limited power of attorney in writing which is expressive of his authority. We didn't have a great deal of correspondence with Mr. Jones after the execution of this bond.

"Q. After he gave you notice of the loss you wrote him about it, didn't you? A. I really don't remember, Mr. Stewart. My office has very little to do with handling claims. We merely transmit such information as we get to the claim department. I wrote to Mr. Jones: 'We have previously received from Mr. R. E. Smith, the general counsel, preliminary notice of probable claim to be made under this bond. A copy of this notice was sent you, a copy to our office, and a copy to the home office under date of February 7th.' *I had previously received notice of the loss.* I wrote this particular letter. The preliminary notice of a probable claim was according to this letter sent to the home office and I knew it had been sent to the home office at the time I wrote that letter. I was State manager at that time in charge of the company's business in Alabama. I was in charge of the production of business, but had no authority to handle claims other than to transmit papers. I transmitted those papers."

The witness further testified: "The claim department of the National Surety Company for the southern territory is in Atlanta. E. W. Moore is one of the company's adjusters. I do not know what authority he has with reference to adjustments. He comes to Alabama and adjusts losses on bonds that I have written and he has handled those adjustments to a conclusion. He worked on this case. I know that he worked on the case in the early part of 1930 on the adjustment. I couldn't really say that I know E. W. Moore did anything with reference to the adjustment of this loss. I wrote that letter. Mr. Jones *was evidently reporting some matters* in connection with this claim."

Neither Mr. Moore, the adjuster, nor Mr. Jones, nor any officer, agent, or employee of the defendant at the home office, was examined to prove that the notice of the claim had not been given. The evidence of Mr. Porter on the point was unsatisfactory. It is true that the defendant examined Mr. Stewart, one of plaintiff's attorneys, in an effort to show that no notice was given, but Stewart's testimony does not throw any light on the subject.

■ This case was tried by the court without a jury, and there was evidence justifying

the conclusion reached by the court that due notice was given, which conclusion under the uniform ruling of this court we will not disturb.

We are forced, therefore, to the conclusion that the defendant failed to prove its pleas 10 and 11.

As we view the case, with replication 3, and the rejoinder of defendant, in or out of the case, the result is the same, for defendant failed to sustain any of its special pleas. Certainly, as to pleas attempting to set up fraud in the procurement of the bond, there is not one vestige of evidence in the record.

The defendant conceded that notice of the claim under the bond for loss occasioned by the dishonesty of Little was timely given.

We find no reversible error in the record, and the judgment of the circuit court will be affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.