393 So.2d 1361 (1980)
NATIONAL STATES INSURANCE CO. et al.
v.
Caroline JONES.
79-138.
Supreme Court of Alabama.
August 22, 1980.
*1363 Ollie L. Blan, Jr. of Spain, Gillon, Riley, Tate & Etheredge, Birmingham, for appellant National States Ins. Co.
R. Clifford Fulford of Fulford, Pope & Minisman, Birmingham, for appellant Mel Gross.
J. Scott Vowell of Beddow, Fullan & Vowell, Birmingham, for appellant Bernard Gold, deceased.
Jerry O. Lorant and J. Gusty Yearout of Lorant, Harris & Yearout, Birmingham, for appellee.
JONES, Justice.
This action for fraud and misrepresentation and for conspiracy to defraud and to misrepresent comes before this Court on appeal by Defendants who were found liable for conspiring to defraud and for perpetrating a fraud on Plaintiff, individually and as administratrix of the estate of Mrs. Minnie L. Haupt, in the sale of a health insurance policy covering Mrs. Haupt, Plaintiff's elderly aunt. The jury returned a verdict against Defendants, in the amount of 3.5 million dollars which was remitted by the trial Judge to $500,000.
Having heard the arguments of counsel, read their briefs, and reviewed the evidence, we affirm the judgment below, including the order of remittitur.
National States Insurance Co. issued two policies of insurance effective March 25, 1976, insuring Minnie L. Haupt against expenses incurred because of cancer and loss due to hospital, doctor and drug expenses. Another policy was issued insuring Minnie L. Haupt effective June 1, 1976, covering expenses incurred because of confinement in a nursing home. Mrs. Haupt was the applicant, insured, and owner of all three policies and was the beneficiary of the hospital, doctor and drug, and the nursing home policies. Her niece, Caroline Jones (Plaintiff-Appellee), was the beneficiary of the cancer policy. Claims were made by Mrs. Haupt under the hospital, doctor, and drug expense policy. These claims were denied by National States for misrepresentations in the application. This policy and the cancer policy were rescinded and the premiums returned to Mrs. Haupt. Mrs. Haupt later died on December 18, 1976. This suit was filed by her niece, Caroline L. Jones, on July 21, 1977.
Multiple issues are presented for our consideration:
1) Does Plaintiff have standing?
2) Is the action barred by the statute of limitations?
3) Is evidence of National States' loss ratios admissible?
4) Is a tape recording of a sales meeting admissible to show intent to defraud?
5) What is the status of the agents involved and was it such that it created liability for the company?
6) Did Plaintiff waive her right to sue by accepting the return of premiums?
7) Did Plaintiff sustain actual damages? Were punitive damages proper? Was the jury verdict excessive and the remittitur proper?

Standing
1) Appellants contend that Plaintiff lacks standing because she was not the applicant, the insured, the beneficiary nor the owner of the policies at issue.
*1364 Plaintiff claims that she was injured as a result of Defendants' fraud and, therefore, has standing to sue. Plaintiff further contends that she was responsible for the policy premiums as well as for her aunt's medical expenses. Plaintiff was billed for the medical expenses incurred by decedent which were to have been covered by the policies.
Our review of the evidence shows that the sales representations were made to and directed at Plaintiff, who had responsibility for the care of her elderly aunt, Mrs. Haupt. The consideration for these contracts was to and did flow from Plaintiff. Thus, Plaintiff has standing and a cause of action. Old Southern Life Insurance Co. v. Woodall, 295 Ala. 235, 326 So.2d 726 (1976).

Statute of Limitations
2) The complaint alleges misrepresentations made on March 25, 1976, and June 1, 1976. Suit was filed on July 21, 1977.
On the basis of these dates, Defendants contend the one-year statute of limitations had run before suit was filed.
The evidence shows that the claims were denied in November, 1976, and that a discussion between Plaintiff and Defendant Mack Loftin concerning the policies occurred in January, 1977. The trial Court submitted this defense to the jury with proper instruction saying, in part, "Our law says that in order to sue for fraud, the suit must be filed within one year from the date the plaintiff learned of the fraud or within one year from the date that the plaintiff came into possession ... of facts which reasonably should have led to the discovery of the fraud." See, Cartwright v. Braly, 218 Ala. 49, 117 So. 477 (1928). The trial Court was clearly correct on this point and the jury's finding on this issue will not be disturbed.

Loss Ratios
3) The admissibility of testimony concerning insurance loss ratios (the relationship between premium dollars collected and claims paid) is the principal substantive issue presented for our consideration.
Defendants argue that it was improper to admit such evidence and that the Court rejected their efforts to introduce evidence in rebuttal. Defendants further argue that this issue was not pleaded and, therefore, not properly before the Court.
Plaintiff argues that wide latitude traditionally has been given concerning the admissibility of evidence in fraud cases, and that this evidence had sufficient probative value to warrant admission.
The trial Court's treatment of this issue began with pretrial instructions to the attorneys concerning the acceptable uses and scope of the evidence on this point. The actual instructions are not part of the record, but that such instructions were given is mentioned in the record.
The Plaintiff's witness, Paul Raadt, an examiner with the Insurance Department of the State of Alabama, called to testify on this issue, was heard by the Court outside the presence of the jury, objections were raised and ruled on, and cross-examination was allowed. In the examination of Mr. Raadt, company-wide and State loss ratio figures for National States Insurance were given for the period 1974 through 1978. The highest percentage was 20.3 in 1978. Defendants' counsel was allowed to question Mr. Raadt on these figures before the Court ruled on their admissibility. After entertaining all of Defendants' objections to testimony on these figures, the Court ruled the State and the company-wide loss ratio figures from 1974 through 1978, inclusive, were admissible. The Court found that the broader spectrum of figures would alleviate the possible misleading of the jury which might have occurred had only State figures for a more limited period been introduced.
Excerpts from the deposition of Edward Rareden, executive vicepresident of National States, were read into the record as part of Plaintiff's case, after Mr. Raadt's testimony. Objections were heard and ruled on as the deposition was read. Portions of the deposition went to loss ratios. Defendants *1365 objected to their admissibility and were overruled. Rareden stated in deposition that it was "common knowledge in the health and accident field that ... to reach a 50% loss ratio figure at some given point in time is a fair figure for the company or a fair profit for the company to work on." He testified that 50% is a fair figure for both the company and the consumer.
Defendants' witness, Thomas Green, president of National States, was allowed to give detailed testimony concerning National's loss ratios in rebuttal to the testimony offered by Plaintiff. The Court allowed Mr. Green to testify, over objection of Plaintiff, that a loss ratio of 50% was a goal which would be reached by National in the future according to studies and calculations by the company and its actuaries, and that 50% is considered in the insurance industry to be a high and laudable figure.
Plaintiff was not allowed to introduce the State of Alabama Insurance Department's records of complaints about National States' nonpayment of claims. On the basis of this exclusion, the Court disallowed the offer into evidence by Defendants of one page of a multi-page report by the State of Missouri Insurance Department giving its assessment of National States' treatment of policy holders on the basis of claims paid.
This careful review of the record shows that the trial Judge kept strict control of this issue with pre-trial instructions to the attorneys, an in camera hearing of the Plaintiff's witness on this subject, and ample opportunity for Defendants' counsel to cross-examine this witness and to examine its own rebuttal witness. He also required Plaintiff to show evidence of company-wide figures rather than limiting the proof to Alabama, thus presenting a more representative sample to the jury.
We classify this case as one of fraud in the inducement. In such a case, evidence going to the intent and state of mind of the alleged perpetrator is particularly relevant. Wide latitude is afforded the Plaintiff in the introduction of evidence in a fraud case. The trial Judge informed the lawyers after one of the in camera hearings that he found the matter to be a proper one for cross-examination, thus implying that the evidence was admissible and that its weight would be determined by the jury. We agree with this finding. This Court gave a succinct synopsis of the applicable standard in Mid-State Homes, Inc. v. Johnson, saying:
"Great latitude is allowed in admitting evidence on the issue of alleged fraud. May v. Strickland, 235 Ala. 482, 180 So. 93 [1938]; National Surety Co. v. Julian, 227 Ala. 472, 150 So. 474 [1933]. Most often the perpetrator of fraud is the sole possessor of actual knowledge of such fraud. Undue restriction should not be placed on the introduction of evidence which has probative value, however slight, on this issue. Weight is for the jury."
Mid-State Homes v. Johnson, 294 Ala. 59, 63, 311 So.2d 312, 315 (1975).
"Under [the] liberal test [of relevancy followed in Alabama], a fact is admissible if it has any probative value, however slight, upon a matter in the case."
McElroy's Alabama Evidence, § 21.01(1) (3rd Ed. 1977).
In National Surety Co. v. Julian, this Court stated:
"Where fraud is involved, a wide latitude is permitted in the introduction of evidence. Of course, this latitude cannot be extended to allow evidence wholly foreign to the issue. But, subject to this limitation, it is proper `to admit any evidence which is competent by other rules of law, either direct or circumstantial, which in the opinion of the court has a legitimate tendency to prove or disprove the allegations in issue, the matter resting largely in the discretion of the trial court.' 27 Corpus Juris, p. 50."
National Surety Co. v. Julian, 227 Ala. 472, 482, 150 So. 474, 482 (1933).
We agree that the trial judge's discretion must, of necessity, have a field of operation in borderline situations. Referencing Rule 303 of the American Law Institute's Model Code of Evidence, McElroy's Alabama Evidence states:

*1366 "This [within the sound discretion of the trial judge] is where such power should lie because, unless some discretion is vested in the trial judge, every ruling upon the admissibility of a particular fact of a kind above-mentioned becomes a law unto itself. If any particular rule of evidence runs into numerous borderline cases, we must either give the trial court some discretion in applying it or admit that the rule is not workable at all. This argument for the investiture of a measurable discretion in the trial court must not be taken, however, as suggesting that an appellate court ought not to correct a plainly prejudicial misuse of discretion by the trial court."
McElroy's Alabama Evidence, § 21.01(6) (3rd Ed. 1977).
Plaintiff contends that the evidence on loss ratios was introduced to give rise to an inference of fraud. We agree with this and find ample support in the record for this contention. We find it clearly admissible for this purpose. The trial Court's careful handling of the issue was in line with the strictest sense of legal propriety and fairness to the litigants.

Tape Recording
4) Plaintiff offered into evidence a tape recording of a sales training meeting which took place after the sale of her policies. The recording included comments by the instructors to the class on making incomplete explanations of policy coverage and on lying to the elderly clients if necessary. Defendants contend the recording was inadmissible because it was a meeting which took place after the sale in question and that it was highly inflammatory and prejudicial. Testimony was offered showing that the instructions given in this meeting were substantially the same as those given in all other earlier training sessions by Defendant company. Thus, the proper predicate for the tape's admission was laid.[1]
We once again look to the standards on admissibility of evidence in fraud cases cited in the previous section and find them applicable to this exhibit as well. Such a tape recording is particularly relevant in a case of fraud in the inducement such as is now before us. See, Old Southern Life Insurance Co. v. Woodall, supra, (a case for fraud in the inducement); compare with Vincent v. Blue Cross-Blue Shield of Alabama, Inc., 373 So.2d 1054 (Ala.1979) (a tort case based on allegations of bad faith for refusal to pay benefits due).
Defendants strenuously argue the impropriety of allowing the jury to have the tape recording in the jury room. They analogize this situation to that of a deposition. Defendants rightly point out that it is improper for a deposition to be taken into the jury room. What Defendants fail to recognize is the distinction between the two situations.
A deposition is the preservation of prior testimony which, when admitted into evidence, is read into the record. The jury, then, does not have access to the deposition itself but may have this testimony re-read to it during its deliberation. The deposition is in essence a conduit used to transport the testimony of an unavailable witness into the record. As stated by this Court in Ott v. Fox, "Under present practice, the deposition, which has been read into evidence, is not itself evidence," and Rule 51, ARCP, prevents depositions from going into the jury room by omitting mention of them. Ott v. Fox, 362 So.2d 836 (Ala.1978). Defendants *1367 are entirely correct in that premise.
A tape recording of a pertinent event is analogous to a photograph of a scene. A recording preserves the situation as it took place just as a photograph preserves the scene as it existed at a given point. The Alabama Court of Civil Appeals succinctly sums up the situation now before us, saying:
"In the instant case, the recording is nothing more than mechanical corroboration of the [words] heard and described by the witness. Such witness was available for cross-examination both as to the [words] heard and the method used for capturing [them] on tape. In this electronic and scientific age the courts would be grossly remiss to fail to allow use of such instruments, under proper safeguards, in conveying truth to the jury."
C. P. Robbins & Associates v. Stevens, 53 Ala.App. 432, 437, 301 So.2d 196, 201 (1974).
Under Rule 51, ARCP, it is largely within the sound discretion of the trial judge to decide which of the articles introduced into evidence may be taken into the jury room. McElroy's Alabama Evidence, § 10.04 (3d Ed. 1977).
The tape was first heard by the Court out of the presence of the jury. No objection was made to particular portions of the tape. The objection to the admissibility of the tape as a whole was overruled. Thus, the entire tape was admitted. The Judge obviously found the technical quality and clarity of the tape to be acceptable and the substance to be relevant. Thus admitted, the tape was eligible to be taken to the jury room if the Judge found it proper. He did and we agree with the propriety of this ruling.

Agency
5) Defendants premise their argument of this issue on the dichotomy recognized in Alabama between soliciting agents and general agents. A discussion of that point is not necessary here. Examination of the record shows that the trial Judge amply instructed the jury on agency and the jury was free to find from the evidence that these agents rose above the status of soliciting agents.
The Court of Civil Appeals in Old Southern Life Insurance Co. v. McConnell gave a good summary of the law on this point, saying:
"As we see it, the extent of the authority of ... [the] agent to bind [the corporate] appellant in contract is not necessarily conclusive in proof of liability of appellant in tort. The liability of a corporation for the torts of its employees, whether agent or servant, is grounded upon the principle of `respondeat superior' not the principles of agency. 3 Am. Jur.2d, Agency, § 267. The factual question to be determined is whether or not the act complained of was done, either by agent or servant, while acting within the line and scope of his employment. The corporation or principal may be liable in tort for the acts of its servants or agents, done within the scope of employment, real or apparent, even though it did not authorize or ratify such acts or even expressly forbade them. Gulf Electric Co. v. Fried, 218 Ala. 684, 119 So. 685. Tollett v. Montgomery Real Estate & Ins. Co., 238 Ala. 617, 193 So. 127; Am.Jur.2d, supra."
Old Southern Life Insurance Co. v. McConnell, 52 Ala.App. 589, 296 So.2d 183, 186 (1974).

Return of Premiums
6) Appellants contend that the return of the premiums paid absolves them of any wrongdoing. Clearly, one cannot rectify a fraud by subsequent conduct. Once the fraud is perpetrated, a cause of action has accrued and the rescission of the contract does not cause the plaintiff to forfeit his cause of action in tort. Old Southern Life Insurance Co. v. Woodall, 348 So.2d 1377 (Ala.1977); Pihakis v. Cottrell, 286 Ala. 579, 243 So.2d 685 (1971).

Damages
7) Appellants again look to the premium refund as basis for their argument *1368 saying here that a refund negated any possibility of damage to Plaintiff. We do not agree. Plaintiff suffered actual damage in several respects. She lost the time value of the money paid in premiums; she lost the opportunity to obtain other coverage by relying on the protection of these policies; and she incurred out-of-pocket expenses for items which had been represented to her as covered by these policies. Such a refund could only be considered in mitigation of damages. Once actual damages, even nominal damages, are established, punitive damages may properly be awarded in fraud cases. Pihakis v. Cottrell, supra.
Our review of the record shows that there was no abuse of discretion on the part of the able and experienced trial Judge in this case concerning the remittitur. Therefore, we find the remittitur order proper and we will not disturb it. Southern Cement Co. v. Patterson, 271 Ala. 128, 122 So.2d 386 (1960). See, also, Central of Georgia Railway Co. v. Steed, 287 Ala. 64, 248 So.2d 110 (1971).
In accordance with this opinion, the judgment below is hereby affirmed.
AFFIRMED.
MADDOX, FAULKNER, SHORES, EMBRY and BEATTY, JJ., concur.
ALMON, J., concurs specially.
TORBERT, C. J., dissents.
BLOODWORTH, J., not sitting.
ALMON, Justice (concurring specially):
I concur because of the peculiar facts in this case. Ordinarily the loss ratio of an insurance company would not be admissible.
NOTES
[1] Compare, however, Davey Tree Expert Company v. Willis, 383 So.2d 529 (Ala. 1980), in which the judgment below was reversed because the trial Court allowed a former subcontractor of defendant to testify to a conversation between himself and the defendant's supervisor not made contemporaneously with the transaction in issue. In Davey Tree, the defendant's agent, whose statement against Davey Tree's interest was recited by the witness, was not an agent of defendant until at least four months subsequent to the transaction in issue. Here, although the tape recording was made after the transaction (the sale of the policy), the testimony is clear that the sales instructions which were taped were substantially the same as those given in all training sessions, including those held prior to the sale of the policies in issue in this case.